No. 35,326

THE STATE OF KANSAS, *Appellee*, v. BEN HUPP, *Appellant.*

(118 P. 2d 579)

Opinion filed November 8, 1941.

*T. R. Evans* and *Robert N. Allen*, both of Chanute, for the appellant.

*Jay S. Parker*, attorney general, *A. B. Mitchell*, assistant attorney general, and *John C. McCall*, county attorney, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action in which the defendant was convicted of selling adulterated meat in violation of G. S. 1935, 65-602. He appeals.

The information was filed direct in district court on November 27, 1940, and was in seven counts. These counts were in identical language except as to the dates on which the sales were alleged to

have taken place. Defendant was convicted on the third count. After the formal parts, the third count alleged that defendant then and there did unlawfully and willfully sell adulterated food for human consumption consisting in whole or in part of the product of a diseased animal, to wit, a cow, during the last of January, and the first part of February, 1940.

To this information the defendant filed an answer and plea of former jeopardy. In this document he denied the allegations of the information, and further alleged that he should not be held to answer the charges because on April 5, 1940, an information containing eight counts and covering the same transactions had been filed against him, and that all these matters had been adjudicated in defendant's favor. A copy of this information was attached to the answer, marked exhibit A. The counts of that information were identical in language with the information upon which the defendant was convicted except that it was charged that he "did then and there unlawfully and willfully keep for sale or offer for sale adulterated food. . . ." The answer alleged certain proceedings were had after the defendant waived arraignment and entered a plea of not guilty and referred to exhibit B, which was attached to the answer. Exhibit B was a copy of a journal entry in the first case dated November 18, 1940, in which the court, after the jury had been impaneled and the county attorney had made his opening statement to the jury, sustained the objection of defendant to the introduction of any evidence in the case on the ground that the information filed in the case did not state facts sufficient to constitute a public offense under the laws of the state of Kansas.

The answer then alleged that the matters charged in the information in the present case were *res judicata* and that to cause the defendant to stand trial upon the information would constitute placing him in jeopardy twice for the same offense.

The state demurred to this answer and plea of former jeopardy and this demurrer was sustained. Evidence was introduced, which will be noticed in due time. The jury was instructed and a verdict returned finding the defendant guilty as to the third count. A motion for new trial was overruled—hence, this appeal.

The defendant first argues that the court erred in sustaining the state's demurrer to his answer and plea of former jeopardy. He concedes that under the rule announced by this court in the case of *State v. Reynolds,* 140 Kan. 269, 36 P. 2d 323, the defendant was not

twice put in jeopardy. He argues, however, the doctrine of *res judicata* is applicable to criminal cases as well as civil, and that the decision of the trial court sustaining the objection to the introduction of evidence as to the first information was *res judicata* of the matters charged in the second information, upon which the defendant was convicted and that the defendant should have been discharged. This takes us first to an examination of the statute with a violation of which the defendant was charged.

G. S. 1935, 65-602, provides, in part, that "it shall be unlawful for any person to sell, keep for sale or offer for sale . . . any article of food . . . which is adulterated . . . within the meaning of this act." G. S. 1935, 65-607, provides, in part: "That for the purpose of this act an article shall be deemed to be adulterated in case of food: . . . 6th . . . if it is the product of a diseased animal or one that had died otherwise than by slaughter."

It will be seen at once that in the first information the county attorney charged the defendant with keeping for sale or offering for sale the product of a diseased animal. For some reason which does not clearly appear the trial court sustained an objection of counsel for the defendant to the introduction of evidence to prove the defendant guilty of a violation of that statute on the ground that the information did not state facts sufficient to constitute a public offense against the laws of the state of Kansas, and discharged the defendant. The information under which the defendant was convicted charged him with selling parts of the same cows to which reference was made in the other information. Was the decision of the trial court holding that the first information did not state a public offense *res judicata* of the matter charged in the second information? This court considered the question first in *State v. Colgate*, 31 Kan. 511, 3 Pac. 346.

Defendant argues that the sustaining of his objection to the introduction of evidence in the former case was equivalent to the sustaining of a demurrer to the information. It does not appear in this record that defendant made any objection to the information or attacked it in any way until after the jury had been impaneled and the first witness had been called. It has been held by this court on several occasions that an objection to the introduction of evidence at that point in the trial will not raise a question as to the insufficiency of an information in a criminal case. Such question should be raised by motion to quash the information or by demurrer filed

against it before the defendant pleads thereto. When this procedure is not followed defendant should wait until after the verdict and move to arrest the judgment if he should be found guilty. (See *Fort Scott v. Dunkerton,* 78 Kan. 189, 96 Pac. 50; *State v. Pryor,* 53 Kan. 657, 37 Pac. 169; *State v. Falk,* 46 Kan. 498, 499, 26 Pac. 1023; *State v. Ashe,* 44 Kan. 84, 24 Pac. 72; *State v. Jessup,* 42 Kan. 422, 22 Pac. 627; *Rice v. State,* 3 Kan. 141, 167; and cases from other jurisdictions noted in Kelly's Criminal Law and Procedure, 4th ed., §§ 217, 218.)

Since defendant's objection could not raise the question as to the sufficiency of the information under proper rules of procedure we will not say that it was equivalent to a demurrer. The result of this is that there was no ruling in the former case which decided the issues of that case in such a manner as to make them *res judicata* as to this case and thus bind the state to forego future prosecution of the defendant.

We gather from the record that one of the reasons for the sustaining of defendant's objection to the former information was that the word "or" should have read "and." It appears that the county attorney offered to amend the information in that particular as soon as the question was raised. This case is one in which we deem it proper to invoke the rule that an information cannot be attacked for insufficiency by an objection to the introduction of evidence and since the defendant is now and has been throughout this litigation invoking a technical consideration of the pleadings he should observe all proper rules of pleading.

Appellant next argues that the court erred in overruling defendant's objection to the introduction of evidence. The brief of the appellant is not clear in this respect, but we gather from the briefs that the basis for the argument is that the information was insufficient in that it did not name the persons to whom the sales were made or state that the county attorney was unable to give this information. It should be noted at the outset that there were several ways in which the county attorney could have prepared this case. He could have taken one cow which had died otherwise than by slaughter, or was diseased and was butchered and sold by defendant, and have made a different count for each sale of the carcass of that cow. Where good meat as well as bad meat was being handled through a butcher shop it would be almost impossible as a practical matter for a county attorney to prove the names of the purchasers

of the bad meat. This court will not say, however, that because the carcass of a diseased cow was ground up into hamburger, together with the meat from cows that had been slaughtered in the regular way, that there would be no way for the butcher to be prosecuted.. The county attorney in this case chose to take another means of preparing and trying his case. He charged the defendant in seven counts with selling adulterated meat and made each count depend upon the carcass of a particular diseased cow or of one that had died otherwise than by slaughter. If the butcher bought the diseased cow, ground the meat into hamburger and sold it to the trade that came into his shop, he would be guilty of a violation of this statute if he sold it to a hundred people or to one person, or if the hamburger into which he ground it was mixed with the flesh of a cow that had been killed in the regular way.

It is true that G. S. 1935, 21-2121, provides that in liquor prosecutions it is not necessary to allege in the information the kind of liquor sold nor to state the name of the person to whom sold. Defendant argues from this that in every other case in which the sale of a product is made criminal it is necessary to have this data in the information. We do not agree. The statute referred to was enacted in 1881 when the state was first starting out on the enforcement of the prohibitory law. Every technical device known to the law was being raised to hamper the conviction of those charged with the crime of selling liquor.

The reason for the rule laid down in some cases, holding that the name of the person to whom the sale was made should be stated in the information and proven, is that it is only by knowing upon what sale the state relies that defendant is able to make his defense.

In this case the state was relying upon the sale of the carcass of a different diseased cow as to each count. Counsel for appellant states that he knew it was the sale of what they called the Tipton cow which the state relied on in the third count, the third count being the one upon which defendant was convicted. Since this was the case, the reason for the rule providing for the stating of the name of the person to whom the sale was made disappears. The giving of this information to the defendant would have offered him no advantage whatever, but requiring such an allegation by the state would have made the prosecution impossible. This court is not going to do that. There are some authorities holding that in a prosecution such as this the name of the person to whom the sale was made

should be stated in the information, or the information must state that the prosecuting officers do not have this information. We prefer the rule laid down in *State v. Maurer, Surkamp and Shortell*, 255 Mo. 152, 164 S. W. 551. That was a prosecution for the sale of oleomargarine. The supreme court of Missouri said:

"The name of the purchaser of the oleomargarine was not a necessary allegation in charging the offense. Where the name of a person other than the accused is not essential to the description of the offense, as it was not in these cases, or the offense does not involve the commission of a trespass against the person or property of another, thereby becoming an essential ingredient of the offense, its omission from an indictment or information is not error." (p. 166.)

See, also, *State v. Tabb*, 124 Kan. 627, 261 Pac. 844.

Defendant next argues that the court erred in overruling his motion for an instruction directing the jury to discharge the defendant. There are three grounds upon which defendant urged the trial court and urges here that this motion should have been sustained.

First, he argues there was no evidence in the record that the Tipton cow got beyond the slaughterhouse of defendant. The record shows that the defendant operated his meat market in Chanute and had a slaughterhouse southeast of Chanute. In the first place, it should be observed that criminal offenses may be proved by circumstantial evidence. (See *State v. Nordmark*, 84 Kan. 628, 114 Pac. 1068; *State v. Cardwell*, 90 Kan. 606, 135 Pac. 597; *State v. Hunter*, 50 Kan. 302, 32 Pac. 37, and *State v. King*, 111 Kan. 140, 206 Pac. 883.)

Much of the evidence in this case is circumstantial. However, if the evidence taken as a whole is so conclusive as to preclude all reasonable doubt as to the innocence of the accused it is sufficient to sustain a conviction.

In this case Fred Pinney testified that on several occasions he had sold to defendant the carcasses of cows which had died on account of disease or from some cause other than being slaughtered. He testified that he brought the defendant a roan cow that he bought of Mrs. Tipton about the 20th of January, 1940; that the cow was dead when he bought it; that he paid Mrs. Tipton $5 for it; that he dressed this cow and quartered it, and hauled it to Mr. Hupp; that when he called up Mr. Hupp, Hupp sent a colored boy that worked for him out to get the beef and paid him $20, which included the offals and the hide.

The county attorney of Montgomery county testified as to a statement the defendant had made to him when he was investigating

a prosecution for selling meat from diseased cows in this county. Amongst other things the county attorney testified that the defendant told him he gave Pinney on January 26 two checks, one for $10 and one for $9; that the defendant stated to him he purchased a live roan cow from Fred Pinney between January, 1940, and the time that he gave this statement, which was March 19, and it was good beef; that he sold the hide and gave Fred Pinney $3.25 credit for the hide. This statement is in apparent conflict with what other witnesses testified to and is very persuasive. A man who worked for defendant testified that the meat was purchased from Fred Pinney and taken to the shop and used; that part of it might be used and made into hamburger and sold across the counter. There is no doubt at all that this roan cow was the same as the Tipton cow. We have concluded that this is sufficient circumstantial evidence to warrant the court in submitting to the jury the question of whether or not the so-called Tipton cow was sold over defendant's counter.

There was a great deal of testimony as to statements that defendant had made to the effect that he had occasionally bought bad meat and used it as dog food. He said, however, in his statement that he never bought any dog meat from Pinney. There was also the statement that defendant made to Mr. McCall, the county attorney of Neosho county, that he bought a roan cow from Pinney and killed her and slaughtered her himself; that she was a live beef, straight as a string.

The state did not produce a witness who testified that he saw meat from the roan cow ground up and placed on the counter or in the show case of defendant, but the facts detailed are sufficient to show he gave $20 for the carcass.

The defendant next argues that this motion should have been sustained because there is no proof that any meat from the Tipton cow was ever sold or that it left the slaughterhouse. This is about the same as the argument to which reference has just been made and what has been said with reference to that seems sufficient.

Defendant next argues that this motion should have been sustained because there was no evidence that the Tipton cow was diseased. It must be remembered that the defendant was charged here with selling meat from a diseased cow. Mrs. Tipton testified that she sold Pinney a roan cow and that it was dead when Pinney bought it. Pinney testified that it was dead; that he gave Mrs. Tipton $5 for it. Defendant gave Pinney $20 for it.

Defendant argues that as far as this testimony is concerned it did not constitute any evidence that the cow was diseased. The statute forbids the sale of meat from an animal, the death of which was due to a disease or that died otherwise than by slaughter. Unless the cow was killed in some accident or died of old age death would be due to a disease. As a matter of fact if she died of old age death would be due to a disease of some sort. Perhaps Mrs. Tipton did not know what killed her cow, but the defendant stated that the roan cow he bought was a two-year-old, and the reasonable inference to be drawn is that she died from some disease. This is another instance where the matters relied upon by the state may be proved by circumstantial evidence.

Defendant argues that the court erred in giving instructions four and five. Without setting the instructions out in full, suffice it to say that instruction five was to the effect that it was not necessary for the state to prove the identity of the person to whom the meat was sold, but it was sufficient that the state had proved to the jury beyond reasonable doubt that the defendant did sell the meat as charged. Defendant argues that this instruction and instruction four, which was to the effect that the jury must be satisfied from the evidence beyond a reasonable doubt that the defendant did sell adulterated meat, constituted error because it did not require the state to prove sales to particular persons. We have been over that point in this opinion with reference to the objection to the introduction of evidence and very little can be added to what has been said. We have concluded that the two instructions were not erroneous.

The same general point is raised by the next argument of defendant that two instructions which he requested were not given. In these two instructions the defendant asked the court to instruct that it was necessary for the state to prove a technical sale; that is, that the state should in its evidence identify the meat, prove the cow died otherwise than by slaughter or was diseased, prove there was a consideration agreed upon between the buyer and seller and identify the buyer. We have disposed of that argument heretofore.

Defendant next argues that the court erred in overruling its motion for a new trial. In this argument he covers matters which have already been dealt with in this opinion. We have concluded that the motion for a new trial was properly overruled.

The judgment of the trial court is affirmed.

WEDELL, J., not participating.