No. 39,045

STATE OF KANSAS, *Appellee*, v. HENRY L. ASHTON, *Appellant*.

(262 P. 2d 123)

Opinion filed October 10, 1953.

*John Q. Royce,* of Salina, argued the cause, and *LaRue Royce, E. S. Hampton, H. H. Dunham, Jr., H. G. Engleman,* and *C. Stanley Nelson,* all of Salina, were with him on the briefs for the appellant.

*Earle E. Brehmer,* county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, *Paul E. Wilson,* assistant attorney general, and *Keith G. Sebelius,* former county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: The defendant appeals from convictions on two counts of an information. One of them is count three, which, as amended, reads:

"That on or about the 17th day of January, 1952, within the County of Norton, State of Kansas, one Henry L. Ashton then and there being did then and there transport upon the highways of the State of Kansas in a motor vehicle certain alcoholic beverage in a container which had been opened and the seal on which had been broken and when such open bottle was not locked in the rear locked trunk or rear compartment, or any locked outside compartment which was not accessible to the driver or any other person in said vehicle while it was in motion, in violation of the provisions of Section 41-804, 1949, G. S. of ·Kansas."

The other conviction was on count five. It reads:

"That on or about the 17th day of January, 1952, within the County of Norton, State of Kansas, one Henry L. Ashton then and there being did then and

there drive and operate a motor vehicle upon the highways of the State of Kansas in such a negligent disregard for the safety of others, and that by reason thereof and the operation of such vehicle in said manner that one Charles W. Bennett died on the 17th day of January, 1952, as the proximate result of an injury received by reason of such negligent disregard of the safety of others; in violation of the provisions of Section 8-529, 1949, G. S. of Kansas."

Defendant challenged count five as follows:

"COMES Now the defendant, Henry L. Ashton, and moves the Court to quash count five of the Information filed in the above entitled action for the reason that said count does not state an offense against the laws of the State of Kansas for the reason that Section 8-529, G. S. 1949, under which said count is allegedly drawn, is unconstitutional and void and violates Section 10 of the Bill of Rights of the Constitution of the State of Kansas and the Sixth Amendment to the Constitution of the United Staes of America. In that said statute and said count in this Information drawn thereunder does not inform the defendant of the nature and cause of the accusation against him."

Appellant states it was the fifth amendment, the due process clause of the United States constitution and not the sixth amendment, as indicated in the motion, which was intended and argued. The motion will be so regarded.

We find no motion in the record leveled against count three before the trial. After the state introduced its evidence in chief on all counts (there were five) appellant moved to quash the information and for his discharge on the ground the testimony failed to prove any offense. The motion was overruled.

We shall consider the counts in the order stated. The evidence pertaining to counts three and five is somewhat related. Instead of attempting to separate it as to each count and in order to avoid confusion we shall narrate the substance of the material evidence covering both counts.

Seven people, four men and three women, occupied the automobile in which they journeyed from Phillipsburg to Norton to attend a dance on the night of January 17, 1952. Two men and two women were in the front seat. One woman and two men were in the back seat. Appellant was the driver. To his right were two women. Charles Bennett, the deceased, was seated on the extreme right of the front seat. That was the side of the car which was damaged most as the car struck the banister of a bridge, resulting in the death of Charles Bennett. The three women in the car testified at the trial. None of the men testified. One of the women seated in the front seat admitted having had one drink that night. The women testified

they did not see any of the men drink prior to the accident. One of them testified the conversation might have indicated that the men had a drink or two but she was not at all positive about that. Appellant had stopped the car on one occasion and the four men left it and returned a short time thereafter. The woman in the back seat and one of the women in the front seat testified they told appellant he was driving too fast, asked him to slow down and that he did so on each occasion. One of them testified he speeded up again later. One woman in the front seat and the woman in the rear seat testified they heard appellant say, "Where is that God damned bottle?".

The car was traveling in a westerly direction and approached a bridge located approximately three miles east of Norton on U. S. highway 36 and near the entrance to the state tuberculosis sanatorium. It was a blacktop road twenty feet wide. The bridge was the same width as the blacktop at the approaches thereto. The road might have been a little wider some distance from the bridge. To warn travelers there were reflectors on the bridge located approximately six inches from the edge of the blacktop. A "narrow bridge" sign was located about 500 feet east of the bridge. It was a well traveled road. It was a cold, dark night but not storming. The road was dry.

A trooper of the state highway patrol arrived at about 11:30 p. m. to examine the accident. He was called at about 10:40 p. m. He testified concerning the findings he made that night. They were, in substance, as follows:

The north banister of the bridge was erected at an angle; the car had struck the bridge banister on the north, or righthand side at a point four feet north of the blacktop pavement; the road and bridge were each twenty feet wide; when the car struck it caromed off and went through the bridge, struck a cement post or guard post on the south side west of the bridge, broke it off and then hit a highway sign or marker, broke it off and came to rest upon the south bank in a leaning position; the car traveled 108 feet to the cement post after it hit the bridge banister and sixty-six feet thereafter before it came to rest; the reflectors on the bridge loomed up brightly; the tire marks to the north of the road showed the car had been traveling north of the pavement and parallel thereto as it approached the bridge; the marks were clearly visible for a distance of fifteen feet east of the bridge; there was no evidence the brakes had been applied; the victims of the accident had all

been removed to the state sanatorium when he arrived; he examined the car and found two whisky bottles labeled, "Glenmore, Kentucky Straight Bourbon Whiskey," on the floor in front of the front seat; one of the bottles was right under the clutch pedal; one of them contained a cork and the other did not; each of them contained about the same amount of liquid, that is, "about one good shot" or a couple of spoonsful; he smelled the contents and it was whisky; when he questioned appellant after the accident appellant had a pretty strong smell of liquor on his breath.

Another trooper for the state highway patrol who examined the accident the following morning substantially corroborated the testimony of the first trooper as to the tracks of the car to the north of the blacktop and the point at which the car struck the north banister.

The sheriff of Norton county arrived while the first mentioned trooper was examining the accident and while the trooper was removing the whisky bottles from the car. He testified, in substance:

He smelled the bottles and there was no doubt about the contents being whisky; he took the bottles and retained possession thereof; he smelled liquor on appellant's breath and his actions indicated he had been drinking intoxicants.

Doctor C. F. Taylor, superintendent of the state sanatorium for tuberculosis, to which appellant and other living occupants of the car were taken immediately after the accident, testified the "whole group smelled of alcohol, and that there was no question about that."

The woman seated next to the appellant testified she saw the abutment of the bridge and knew they would hit it. She saw no lights of vehicles approaching the bridge from the other direction. The other woman in the front seat said the last of the incident she remembered was when she heard Charles Bennett, the deceased, who was seated to her right say, "Look out for the culvert." She testified she had only one drink that evening and that appellant did not drink in her presence that evening. The other two women testified they had not had a drink and there were no drinks on the trip to their knowledge. All the women testified they did not see the bottle appellant inquired about. There was some evidence appellant's conduct after the accident might have been due to the shock from the collision rather than to intoxication. The jury on request of appellant's counsel viewed the scene of the accident.

We have no hesitancy in concluding there was sufficient evidence to support the conviction on count three. Neither do we entertain doubt as to the sufficiency of the evidence to sustain the conviction on count five provided the statute, G. S. 1949, 8-529, on which that count was framed, is a constitutionally valid enactment and the information was sufficient. We shall first consider the statute which, except the penalty provision, reads:

"(*a*) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in negligent disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide. . . ."

Appellant vigorously contends the statute contravenes the following portion of section 10 of our bill of rights, which reads:

"In all prosecutions, the accused shall be allowed to appear and . . . demand the nature and cause of the accusation against him; . . ."

and violates that part of the fifth amendment to the constitution of the United States which provides:

"No person shall be . . . deprived of life, liberty, or property, without due process of law. . . ."

Appellant argues the statute is too indefinite and uncertain to specifically inform a person what is prohibited thereby. In support he refers to similar statements in numerous cases including that contained in *State v. Rogers,* 142 Kan. 841, 52 P. 2d 1185, where we quoted with approval from *Connally v. General Const. Co.,* 269 U. S. 385, 70 L. ed. 322, 46 S. Ct. 126, as follows:

"'A criminal statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application, lacks the first essential of due process of law.' (*State v. Blaser,* 138 Kan. 447, 448.)" (p. 849.)

We adhere to the rule. The question here is whether the instant statute violates that principle. Appellant insists it does and argues it fails to specify the detailed acts or omissions which constitute "negligent disregard of the safety of others" and fails to define the quoted phrase. The general question of the sufficiency of a criminal statute which fails to specify in detail specific acts that constitute the offense but contains a general statement of the offense in plain legal parlance, well defined by judicial interpretations, and in language commonly understood by persons of average intelligence was treated in *State v. Rogers,* supra, in which our former decisions and those of other states were considered. Such a statute was held constitutional. We direct particular attention to the cases therein

cited from Wisconsin and Ohio involving the sufficiency of certain criminal sections of the traffic code.

In a later case of *State v. Carr*, 151 Kan. 36, 98 P. 2d 393, we held:

"That part of G. S. 1935, 21-818, providing that 'any person who shall knowingly and willfully commit *any irregularity or fraud whatever* with the intent to hinder, prevent or defeat a fair expression of the popular will' at any election 'shall be deemed guilty of a felony' does not contravene either the fifth or fourteenth amendments to the constitution of the United States or the fifth or tenth sections of the bill of rights of the constitution of Kansas, for the reason that it forbids the doing of any act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application, nor for the reason it is not sufficiently explicit to inform those subject to it what conduct on their part will render them liable to its penalties." (Syl. ¶ 4.) (Italics supplied.)

In that opinion our former cases including many now relied on by appellant were again reviewed. We said:

"The question of unconstitutionality for vagueness and uncertainty was again before this court in *State v. Rogers*, 142 Kan. 841, 52 P. 2d 1185, where a statute with reference to unlawful allowance of claims against the county was invoked. (G. S. 1935, 19-242.) In that decision many cases bearing on the question are noted. We need not review the decision fully. This court held that the use of the phrase 'according to the legal or *ordinary* compensation or price' etc., was not so vague or indefinite as to subject the statute to condemnation as being unconstitutional, the word 'ordinary' being held to have a common and accepted meaning. The same question raised in the Rogers case was before this court in *State v. Millhaubt*, 144 Kan. 574, 61 P. 2d 1356, and the ruling in the Rogers case was adhered to. A petition for writ of certiorari to the supreme court of the United States was denied in *Millhaubt v. Kansas*, 301 U. S. 701, 57 S. Ct. 931, 81 L. Ed. 1356, and a rehearing was denied in 302 U. S. 773, 58 S. Ct. 5, 82 L. Ed. 599." (p. 40.)

We cannot agree the statute contains no act which is specifically forbidden. It prohibits the negligent driving of a vehicle (a) when the negligence is such as to be in disregard of the safety of others and (b) when such conduct is the proximate cause of death which ensues within one year. It is clear the legislature did not attempt to specify in detail the innumerable and variable circumstances, conditions, acts and omissions from which death might result from vehicular traffic. It undertook to enact a statute sufficiently broad to encompass negligent acts and omissions of all kinds and character from which death ensued when committed in disregard of the safety of others. It is a police measure designed to protect the public from the constantly mounting death toll resulting from vehicular traffic.

In order to prevent or decrease these direful results the law, of necessity, had to be broad and general in its reach. In *State v. Carr*, supra, we said:

"We are of opinion that the purpose of the statute was not so much *to denounce certain specific acts as to prevent a certain result.* We do not overlook the fact that there may be dispute as to what, in certain circumstances and under varying conditions, might be included within the phrase *'any irregularity or fraud whatever.'* We do not have any doubt that what the legislature intended was to denounce *the commission of any act done* 'with the intent to hinder, prevent or defeat a fair expression of the popular will' and by statute to declare that to be an offense which was an offense at common law. We do not believe the statute either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, nor that the statute should be held unconstitutional." (p. 42.) (Our italics.)

Surely we need not debate whether the term "negligent" has a well defined meaning in legal parlance or in the mind of the average citizen. It is equally true the word "disregard" has no hidden meaning. In *Forsyth v. Church*, 141 Kan. 687, 42 P. 2d 975, we approved the following definition of the word:

"In Webster's New International Dictionary, the word 'disregard' is defined as follows: 'Not to regard; to pay no heed to; to fail to notice or observe; hence to slight as unworthy of regard or notice, as to disregard the admonition of conscience.'" (p. 689.)

The same definition was adopted in *State v. Harold*, 74 Ariz. 210, 219, 246 P. 2d 178, involving a similar highway statute.

In *Commonwealth v. Pentz*, 247 Mass. 500, 143 N. E. 322, a very similar statute was held constitutional when attacked for indefiniteness and uncertainty. The court, in part, said:

"By its terms 'Whoever upon any way . . . operates a motor vehicle so that the lives or safety of the public might be endangered' is made subject to punishment. The operation of an automobile upon a way is a clearly defined act, susceptible of being easily understood. Its operation so as not to endanger the lives or safety of the public *is the description of a fact.* While it may not be easy to formulate in words a comprehensive definition of that fact applicable to all cases, it is not difficult to comprehend with some approach to accuracy the thought conveyed by the description of that fact. Negligence of varying degrees has been made the basis of indictment under numerous statutes." (p. 506, 507.) (Our italics.)

In the same case it was also stated:

"It seems impossible to draw a sound line of distinction between causing injury by negligence or by gross negligence on the one hand, and operating an automobile on a way so as to endanger the lives and safety of the public on the

other hand, and say that the one is specific and certain, and the other vague and indefinite. To endanger the lives and safety of the public by the operation of an automobile on a public way is not an intangible and shadowy act." (p. 507.)

Manifestly, no legislature could accurately anticipate every possible circumstance or contingency which might arise and legislate specifically concerning it. That would be true concerning speed and all other factors which might become involved in highly dissimilar situations. The Ohio supreme court in *State v. Schaeffer*, 96 O. S. 215, 117 N. E. 220, aptly stated:

"There is no place in all the public grounds and parks where a situation is not constantly changing from comparatively no traffic to a most congested traffic; from no foot travelers to a throng of them; from open and clear intersections, private drives and street crossings, to those that are crowded; from free and unobstructed streets to streets filled with crowds of foot travelers and others getting off and on street cars and other vehicles. In order to meet these varying situations and impose upon the automobilist the duty of anticipating them and guarding against the dangers that arise out of them, this statute was evidently passed in the interests of the public safety in a public highway." (p. 234, 235.)

Some offenses admit of much greater precision and definiteness than others and where possible statutes always should be framed with reasonable certainty. Reasonable and not mathematical certainty is what the law requires. It appears the instant statute is about as definite and certain as the subject matter, the evil sought to be remedied, permits. That is the real test. Under such circumstances a police measure enacted for the safety of the public will not be nullified on the ground of constitutional invalidity. (*State v. Rogers*, supra, p. 855, 857.)

That traffic statutes based on general provisions prohibiting negligent, careless, reckless or willful and wanton conduct in disregard of the safety of others do not contravene the constitutional guarantee of due process or the tenth section of our bill of rights by reason of indefiniteness or uncertainty is established by the overwhelming weight of authority. Some of the cases are: *State v. Schaeffer*, 96 O. S. 215, 117 N. E. 220; *Commonwealth v. Pentz*, 247 Mass. 500, 143 N. E. 322; *Mulkern v. State*, 176 Wis. 490, 492, 187 N. W. 190; *State ex rel. Zent v. Yanny*, 244 Wis. 342, 12 N. W. 2d 45; *The People v. Green*, 368 Ill. 242, 13 N. E. 2d 278; *Usary v. State*, 172 Tenn. 305, 112 S. W. 2d 7; *State v. Bolsinger*, 221 Minn. 154, 21 N. W. 2d 480; *State v. Harold*, 74 Ariz. 210, 246 P. 2d 178; *The People v. Garman*, 411 Ill. 279, 103 N. E. 2d 636; *Lancaster v. The State*, 83 Ga. App.

746, 64 S. E. 2d 902; *United States v. Henderson*, 121 F. 2d 75; *State v. Hamilton*, 133 W. Va. 394, 56 S. E. 2d 544, 12 ALR 2d 573, anno. 580.

Although we need not commit ourselves to all statements contained in each of the foregoing cases we agree statutes of this particular character are not void or unconstitutional. For general terms of our fourth degree manslaughter statute under which convictions for culpable negligence in driving motor vehicles have been approved, see G. S. 1949, 21-420 and cases cited thereunder.

We are not unmindful of a contrary view taken by respectable authority in Texas and in some early Georgia decisions. But see later Georgia case of *Lancaster v. The State*, supra. In any event we prefer to adhere to what we conceive to be the more humanitarian doctrine agreeing that only severe measures offer hope of compelling the ever-increasing number of negligent, careless or reckless drivers to maintain a decent respect and regard for the rights and safety of others. The statute involves a matter of legislative wisdom and policy which courts have no right to nullify if the statute is in other respects a valid enactment and we think it is.

What about the sufficiency of the information to withstand the motion to quash? The information followed the language of the statute. It frequently has been held that ordinarily is sufficient. (*State v. Eason*, 163 Kan. 763, 186 P. 2d 269; *State v. Stroble*, 169 Kan. 167, 217 P. 2d 1073; *State v. Spohr*, 171 Kan. 129, 230 P. 2d 1013; *United States v. Henderson*, supra, and cases therein cited.)

Appellant quite properly stresses our statutes which require that an indictment or information state the facts constituting an offense in plain and concise language. (G. S. 1949, 62-1004; 62-1005; 62-1010.) He admits it is sufficient that an information follow the language of the statute where the elements of the offense are specified therein but contends where a statute creates an offense only by generic terms the particular facts relied on for conviction must be specifically pleaded, citing among other cases *State v. Seely*, 65 Kan. 185, 69 Pac. 163, and *People v. Maki*, 245 Mich. 455, 223 N. W. 70.

We shall not write a treatise on the merits of the rule obtaining in the various states. It frankly should be conceded there is not complete harmony in the decisions on this point. Conflicting views are expressed in some of the cases cited herein where the statute itself was held not violative of constitutional requirements as to definiteness. The correct general rule is well stated in a headnote

to *United States v. Henderson,* supra, involving a similar section of the traffic code, as follows:

"Where the language of a statute, without more, is sufficient to apprise an accused *with reasonable certainty of the nature of the accusation against him,* an information or indictment drawn in that language will be sufficient, otherwise additional allegations must appear therein." (Headnote 3.) (Our italics.)

We have already held the instant statute is not invalid for indefiniteness. The information followed it. Does the record indicate the information failed to apprize appellant with reasonable certainty of the nature of the accusation against him? There were two continuances in this case, one on request of the state and one the following term by agreement of the parties. On the latter date the case was set for trial in September, about four months later. In September appellant waived arraignment and joined issues on the offense as charged, which he now says is too indefinite, by entering his plea of not guilty thereto. It was not until the day of trial, over a month later, that appellant moved to quash the information on the grounds stated at the beginning of this opinion.

It will be observed appellant filed no motion for a bill of particulars and did not move that the information set forth any additional facts in order to apprize him more fully of the accusation against him.

Our bill of rights is frequently misinterpreted. Unlike bills of rights in some states section 10 of ours does not prescribe the degree of particularity and specifications required in an indictment or information. It guarantees only the right to every accused person to appear and "demand the nature and cause of the accusation against him." Appellant, as already indicated, had made no demand for a more elaborate or detailed statement of the facts but on the contrary joined issues on the charge as framed. Touching this precise point it was early said in *State v. Reno,* 41 Kan. 674, 21 Pac. 803:

"We think this is one of that class of cases in which the court might in its discretion require the prosecution to file a bill of particulars, but such bill of particulars will be required only in cases where the indictment or information does not of itself definitely and specifically set forth the facts, but sets them forth only vaguely or in such general terms that the defendant could not well know what he is required to defend against. Of course the defendant has the right in all cases to demand that the nature and the cause of the accusation against him shall be clearly and definitely set forth in the written charge against him. (Section 10, Bill of Rights.) But where the complaint is sufficient in all particulars except that it states the facts constituting the offense only in

general terms or vaguely, and not in specific detail, the defendant must, if he desires a more elaborate or detailed statement of the facts, set forth in his motion the portions of the indictment or information which he claims to be insufficient or defective, and point out to the court wherein he desires a fuller, more complete, more definite or more circumstantial or particular statement of the facts. This was not done in the present case. The defendant's motion was certainly as objectionable in this respect as was the information, and the court below did not err in overruling it. We think the information was sufficient as against such a motion." (p. 679.)

In other words section 10 of our bill of rights grants an accused a privilege which he may exercise or waive as he sees fit. Here appellant waived the privilege. We have said a motion to quash should be filed before a defendant pleads thereto. (*State v. Hupp,* 154 Kan. 410, 412-413, 118 P. 2d 579.) In *State v. Finney,* 141 Kan. 12, 28, 40 P. 2d 411, we said an attack on the information must be filed prior to the plea. We think this is a sound rule of procedure. The rule is especially appropriate where, as here, the information is later attacked only on the ground it should have alleged the facts with greater particularity. Under what logical theory should a person be permitted to escape prosecution by asserting for the first time on the day of trial that he did not know the nature and cause of the charge against him when long prior thereto he had answered the identical charge by stating he was not guilty thereof? We are aware of none and none is suggested.

There is another legislative mandate which we cannot ignore. G. S. 1949, 62-1011, insofar as here pertinent, provides:

"No indictment or information may be quashed or set aside for any of the following defects:

. . . . . . . . . . . .

"*Sixth.* For any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged. Nor,

"*Seventh.* For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

See numerous cases cited under the above section including *State v. Champ,* 172 Kan. 737, 242 P. 2d 1070.

A search of the record fails to disclose the slightest indication of appellant's surprise or bewilderment with respect to testimony introduced in support of the charge. Moreover, appellant does not now indicate in what way he was in anywise unprepared to make his defense by reason of lack of a fuller and more detailed information. In the light of the entire record appellant's complaint concerning the information cannot reasonably be said to

have prejudiced, or tended to prejudice, his substantial rights. Under such circumstances this court is commanded to give judgment without regard to technical errors or defects or to exceptions taken. (G. S. 1949, 62-1718; *State v. Neff*, 169 Kan. 116, 218 P. 2d 248, and numerous cases cited therein and under the statute.)

Appellant complains of certain instructions given and of failure to give some he requested. They have all been examined with care. Patient consideration of these contentions leads us to conclude no reversible error was committed in this regard.

We have not overlooked the numerous cases furnished by the industry of appellant's counsel touching various aspects of this case. An examination of the record convinces us appellant had a fair trial.

The judgment is affirmed.