No. 46,617

State of Kansas, *Appellee,* v. Kenneth Scott, *Appellant.*

(502 P. 2d 753)

Opinion filed November 4, 1972.

*Bernis G. Terry,* of Olathe, argued the cause, and *Charles P. Fleming, Jr.,* of Mission, was with him on the brief for the appellant.

*Mark L. Bennett, Jr.,* assistant county attorney, argued the cause, and *Vern Miller,* attorney general, and *James A. Wheeler,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: Defendant was convicted by jury trial of permanent deprivation of property valued over $50.00 (K. S. A. 1971 Supp. 21-3701) and the burglary of an automobile (K. S. A. 1971 Supp. 21-3715). He appeals from the verdict, order overruling motion for new trial, order overruling motion to arrest judgment, judgment of conviction and imposition of sentence.

On October 26, 1970, plaintiff filed a complaint in the Johnson County Magistrate Court, charging Robert Gregory Burns and Kenneth Scott with the crimes of theft of property of a value in excess of $50.00 and burglary.

On November 24, 1970, a hearing was held in the magistrate court in regard to the defendant Burns only. At the time of the hearing, the complaint on file with the court was amended by interlineation as to Burns only, amending Count I to charge the crime of theft of property of the value of less than $50.00 and dismissing the burglary as it was alleged in Count II of the complaint, following which the defendant Burns entered a plea of guilty.

On December 10, 1970, defendant appeared before the court for a preliminary hearing on the felony theft and burglary charges and following the presentation of evidence by the state, the court bound the defendant over for trial in the district court of Johnson County, Kansas, finding that the crimes as set out in the complaint and as defined by K. S. A. 1971 Supp. 21-3701 and K. S. A. 1971 Supp. 21-3715 were committed in Johnson County and that there was probable cause to believe the defendant had committed them.

At the trial the state's evidence established that John Wright, Jr., a high school senior, had car trouble on the 20th day of October, 1970, and at that time he left his car at a Phillips 66 service station at 67th Street and I-35 in Johnson County, Kansas. At that time he asked the attendant at the station if it was all right to leave the car there and was advised that it would be all

right but that he should lock the car. When he returned to the station on October 22, 1970, he observed that the wing window of the car had been forced open and that a Sun Super Tachometer which had been attached to the steering column was missing. Cap screw bolts which had held the tachometer in place had been undone and wires leading to the tachometer had been cut and it had been removed from the steering column of the automobile. Additionally, upon looking under the hood of the vehicle he observed that the manifold, manifold adapter on the carburetor, distributor, distributor cap and plug wire were also missing.

According to Burns, who testified on behalf of the state, he and the defendant had been working at the service station in October of 1970 and on the 20th day of October, 1970, John Wright left his car there after a conversation with both of them. He testified further that on the 24th day of October, 1970, at approximately 7:20 in the evening he and the defendant went over and looked in Wright's vehicle and saw the tachometer attached to the steering column. Defendant then popped open the wing window, opened the door and removed the tachometer with a screw driver. Defendant then raised the hood of the car, saw the carburetor and sent Burns into the station to get some tools to remove the carburetor. Defendant then removed the carburetor, distributor and manifold, kept the tachometer stating that he was going to give it to his brother-in-law, and told Burns to take the rest of the parts home. Burns then took the parts home and put them in the basement until the 25th day of October, 1970, at which time defendant requested that he bring them back to the station which he did.

Mike Burgess, a friend of Wright's, upon learning from Wright that these parts had been taken from his automobile, agreed to help Wright attempt to locate them. In the course of this he talked to Burns concerning the purchase of the carburetor and upon seeing it, recognized it as belonging to his friend, Wright. On October 25, 1970, Burgess, accompanied by Detective Cobb of the Johnson County sheriff's office, proceeded to the service station where he attempted to purchase the manifold from Burns. Upon seeing the manifold which was the subject of the discussion, Burgess recognized it as belonging to Wright and so advised Detective Cobb, at which time Burns was placed under arrest.

The defense presented the testimony of defendant's brother-in-law, James Pflumm, Jr., the defendant's wife, and the defendant, to show only Burns was guilty of taking the auto parts. Pflumm

testified that he had not seen the said automotive parts in defendant's presence, but had seen them in the trunk of Burns' car on a Sunday. Pflumm had wanted to trade carburetors and defendant had advised Pflumm that Burns had a carburetor that he wanted to trade since Burns indicated it was too big for his car. Defendant and Pflumm went to the service station. Burns drove off and returned, opening his trunk where Pflumm saw all of the parts. Pflumm declined to trade his carburetor for Burns'. Defendant agreed to rebuild Burns' carburetor and Burns offered defendant a tachometer to pay him for his work in such rebuilding. Defendant and Pflumm took the carburetor for rebuilding and the tachometer for payment. Pflumm borrowed the distributor to check out on a racing car which he and another friend owned.

Defendant denied entering Wright's car for any purpose. He stated that two or three weeks earlier Burns had been wanting to buy a carburetor. Pflumm had one but Burns didn't have any money. On Friday or Saturday, when defendant stopped by the service station for gas, Burns told appellant that he had a carburetor to trade for Pflumm's carburetor. On Sunday, defendant and Pflumm went to the service station and defendant saw all of the property in the trunk of Burns' car. Pflumm decided not to trade carburetors. There was a discussion about defendant's rebuilding Burns' carburetor for $8.00 to $10.00 for the kit and for $10.00 for his work. However, Burns offered to give defendant the tachometer. Defendant didn't want the tachometer but offered to give it to Pflumm who would pay defendant one-half the cost of the work. Defendant confirmed that he and Pflumm borrowed the distributor to check on a friend's car. The manifold remained in Burns' trunk.

On appeal, the defendant lists 46 assignments of error. He covers the assignments of error under 18 different headings. We will discuss the arguments as they are numbered and identified in defendant's brief.

Defendant in Argument I claims the magistrate court lost jurisdiction of the defendant and the district court never acquired jurisdiction.

The state commenced prosecution of defendant and the witness, Burns, by filing in magistrate court a complaint charging each of them with the felonious permanent deprivation of property having an approximate value of over One Hundred Sixty Dollars, in violation of K. S. A. 1971 Supp. 21-3701, in Count I, and with

burglary in violation of K. S. A. 1971 Supp. 21-3715, a felony, in Count II. Defendant points out that the complaint was amended in the magistrate court to charge a misdemeanor in Count I and to dismiss Count II. Defendant further points out that the journal entry binding the defendant over for trial in the district court referred to the "offenses as set out in the complaint."

Defendant argues that since the only offense set out in the complaint was a misdemeanor he could not have been bound over to the district court on a felony.

The state shows that at the hearing in magistrate court for Burns the complaint was amended as indicated, but only as to defendant Burns. In support, the state points out that the court made a note on the face of the complaint that the amendment applied to Burns only. An examination of the record discloses the court's note on the face of the complaint and the judge's minutes are consistent with an amendment as to Burns only. We conclude that the amendment of the complaint did not apply to defendant Scott and he could be properly bound over on any charges satisfactorily proven at the preliminary hearing. (*The State v. Fields,* 70 Kan. 391, 78 Pac. 833.)

Defendant in Argument II attacks the sufficiency of the information. He contends the information was jurisdictionally defective in that it failed to state in what manner defendant exercised unauthorized control over the stolen property. He further contends the information was jurisdictionally defective in that it alleged facts in the disjunctive.

It is not necessary to consider the extended argument of the defendant on these points. The defendant on arraignment entered a plea of not guilty and subsequently was tried and convicted. No attack was made on the information until the close of the state's case.

This court has long held that an attack on the information must be filed prior to the plea. In considering like arguments on the sufficiency of an information, we said in *State v. Ashton,* 175 Kan. 164, 262 P. 2d 123:

". . . Does the record indicate the information failed to apprize appellant with reasonable certainty of the nature of the accusation against him? . . . In September appellant waived arraignment and joined issues on the offense as charged, which he now says is too indefinite, by entering his plea of not guilty thereto. It was not until the day of the trial, over a month later, that appellant moved to quash the information on the grounds stated at the beginning of this opinion.

"It will be observed appellant filed no motion for a bill of particulars and did not move that the information set forth any additional facts in order to apprize him more fully of the accusation against him.

"Our bill of rights is frequently misinterpreted. Unlike bills of rights in some states section 10 of ours does not prescribe the degree of particularity and specifications required in an indictment or information. It guarantees only the right to every accused person to appear and 'demand the nature and cause of the accusation against him.' Appellant, as already indicated, had made no demand for a more elaborate or detailed statement of the facts but on the contrary joined issues on the charge as framed. . . .

. . . . . . . . . . . .

"In other words section 10 of our bill of rights grants an accused a privilege which he may exercise or waive as he sees fit. Here appellant waived the privilege. We have said a motion to quash should be filed before a defendant pleads thereto. (*State v. Hupp,* 154 Kan. 410, 412-413, 118 P. 2d 579.) In *State v. Finney,* 141 Kan. 12, 28, 40 P. 2d 411, we said an attack on the information must be filed prior to the plea. . . ." (pp. 174,175.)

We conclude each of the defendant's arguments is without merit on the rationale of *Ashton.* In further support of our position, see *State v. McArthur,* 186 Kan. 745, 352 P. 2d 954, and *Kelly v. State,* 196 Kan. 428, 411 P. 2d 611, which hold technical defects in an information are waived by entering a plea thereto.

Argument III claims error in the admission of State's Exhibit No. 5. This was a written statement of state's witness, Burns, taken at the time of his arrest and introduced to corroborate his testimony at the trial. Defendant contends it was hearsay and was not admissible unless the witness had been impeached, citing *State v. Fouts,* 169 Kan. 686, 221 P. 2d 841.

If witness Burns was impeached the written statement was properly admitted in evidence. We must determine under the facts in this case whether the witness was impeached. Impeachment occurs when a suggestion is made by direct proof or by the nature of an examination that a witness has testified falsely for hope of reward, promise of immunity, fear, or malice. The record discloses the defendant's counsel asked the witness the following questions:

"Q. Now, you originally were charged in this thing as a codefendant with the Defendant Kenneth Scott, were you not?

. . . . . . . . . . . .

"Q. And there was some sort of a deal made whereby you entered a plea of guilty to a lesser charge, was there not?

. . . . . . . . . . . .

"Q. And then you entered a plea of guilty to a lesser charge, didn't you?

. . . . . . . . . . . .

"Q. Was any promise made to you at the time of that plea?

. . . . . . . . . . . .

"Q. After you entered a plea you did not go to jail?

. . . . . . . . . . . . . . .

"Q. (By Mr. Fleming) Only one or two more questions, Your Honor. Mr. Burns, do you know why the charge was reduced from two felonies to one misdemeanor in your case?"

The gist of these questions suggests to the jury that the witness was fabricating testimony in return for a dismissal of the felony charges against him, and permitting him to plead to a misdemeanor. In these circumstances the witness stands impeached. Previous statements of the witness consistent with his trial testimony made prior to the reduction of the charges, and a plea of guilty thereto, are admissible to bolster his credibility.

We find no error in admitting the prior statement of the witness, Burns, under the facts in this case.

Arguments IV and V claim error in allowing the state to introduce evidence of prior convictions and of a confession of a prior crime. The prior convictions consisted of a burglary and larceny of the Livesay residence and a burglary and larceny of the Gibson Skelly Service Station. The confession made to a testifying officer concerned a burglary of the Schauble D-X Service Station.

Prior to the admission of the prior convictions and the confession, and outside the hearing of the jury, counsel made the following statement to the court:

"I will state, for the record, that the Defendant will, in fact, testify. The Defendant will, in fact, testify on these very points as to what he was guilty of, what he entered a plea to. There was no trial in those previous cases. It is not saying that the State was not prepared for trial. I am sure that they were, but the fact is that this Defendant entered a plea to two of three felonies that were charged. . . ."

In addition, the following colloquy took place between the court and counsel for the defendant:

"THE COURT: Let me inquire, Mr. Fleming. Did I understand you to say that it was your intent to introduce evidence with reference to these prior pleas?

"MR. FLEMING: Absolutely. I will stipulate to the fact that the Defendant is going to testify. They can pull him out as part of the Prosecution case, if they want him.

"THE COURT: What is your basis for contending that you have the right to put that evidence in?

"MR. FLEMING: To put in what his record is?

"THE COURT: Yes.

"MR. FLEMING: Because his character is going to be in question, and he will be on the stand, and he will testify in regards to his prior offenses, and as to what they were. What he entered a plea to, and what he was sentenced to.

"THE COURT: If you intend to introduce evidence yourself, what possible objection could you have to the State introducing evidence?

"MR. FLEMING: By the manner in which it is going to be introduced, the vehicle, I mean, of which is coming before this Jury."

In connection with the arguments on the motion for a new trial the trial court made the following statement:

". . . This Court believes that the Defendant would not and could not have been convicted, except for the evidence of prior crimes. Accordingly, I would grant a new trial, except for the fact that the game plan or trial strategy of the Defendant's attorney called for the Defendent to produce this same evidence as character evidence. The apparent theme being that the young man standing accused had previously erred, candidly admitted guilt, mended his ways and would not have been involved in so petty of a crime with such magnificent circumstances. Offering such would also tend to explain an undue fear of being used and tends to justify the temporary throwing away of some of the auto parts in his possession prior, to his reconsideration and having these parts delivered to his counsel. Inasmuch as the Defendant announced his intention to introduce this evidence prior to the trial commencing, the Court will not grant a new trial on this ground."

We agree with the trial court.

The defendant, during the presentation of the state's case, announced that he was going to testify, and that he would admit the prior convictions. Under these circumstances, we find no abuse of discretion by the trial court in permitting this evidence to be admitted on introduction by the state.

Argument VI claims error in allowing the state to impeach a witness called by the defendant, but endorsed on the information as a state's witness.

Whatever merit defendant's argument may have, it was eliminated with the enactment of the new code of civil procedure in 1964. K. S. A. 60-420 provides:

"Subject to sections 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling him may examine him and introduce extrinsic evidence concerning any conduct by him and any other matter relevant upon the issues of credibility."

Argument VII claims error in failing to order the state to furnish defendant with all evidence favorable to the defendant.

Such a motion was made by the defendant and although presented to the trial court no formal ruling was made. Knowing the court had not ruled, the defendant elected to proceed to trial. The act of the defendant in proceeding to trial without requesting a ruling on the motion constitutes a waiver of all rights sought by the motion.

Argument VIII claims error in failing to grant the defendant's motion for a directed verdict, judgment of acquittal, or for a new trial.

This argument centers around the statement of the trial court that the defendant would not have been convicted without the evidence of prior crimes. The trial court also comments that the evidence of prior crimes was not admissible as relevant to the elements set forth in K. S. A. 60-455.

We have previously stated under Argument IV that the trial court did not abuse its discretion in admittting evidence of prior crimes. The application of K. S. A. 60-455 was not the basis for the admission of such evidence. Furthermore, the testimony of witness Burns, if the jury believed it and apparently they did, was sufficient to support the conviction. We see no merit in defendant's contention.

Arguments IX, X, XI, XII, and XIII relate to instructions. The record discloses no timely objection by the defendant to any instructions attacked on appeal. Defendant claims, however, that he is entitled to review the instructions based on provisions of K. S. A. 1971 Supp. 22-3414 (3), which reads in part:

"No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection unless the instruction is clearly erroneous. . . ."

After carefully reviewing the instructions we cannot say that any of them are "clearly erroneous."

Arguments XIV and XV claim a new trial should have been granted on account of newly discovered evidence in the form of an analysis of a polygraph examiner concluding that defendant told the truth. Defendant further claims that the analysis discloses witness Burns gave false testimony which resulted in defendant's conviction.

The results of a polygraph or lie detector test are not admissible as evidence under the decisions of this court. (*State v. Lee*, 197 Kan. 463, 419 P. 2d 927, cert. den. 386 U. S. 925, 17 L. Ed. 2d 797, 87 S. Ct. 900, reh. den. 386 U. S. 978, 18 L. Ed. 2d 142, S. Ct. 1170.) Newly discovered evidence must be admissible to form a basis for granting a new trial.

Additional arguments have been covered in connection with other contentions made by defendant and we find they are without merit.

The judgment is affirmed.