(98 App. Div. 516)

## LICHTENSTEIN v. RABOLINSKY.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1904.)

1. SALES—COLLATERAL WARRANTY—LIABILITY OF SELLER.

> Where, on a sale of iron scrap the seller guarantied the goods to be "good clean busheling scrap," the fact that they were found to contain dirt and small pieces of malleable iron, cast iron, tin, etc., impairing the value of the whole commodity, resulting in loss to the buyer, rendered the seller liable as for breach of collateral warranty, notwithstanding the buyer had opportunity to examine the goods, but did not do so.

> McLennan, P. J., and Stover, J., dissenting.

Appeal from Special Term.

Action by Meyer Lichtenstein against Harry Rabolinsky. From an order setting aside a verdict, and granting a new trial, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

August Becker, for appellant.
Maulsby Kimball, for respondent.

SPRING, J. In January, 1900, the defendant sold to plaintiff a car load of busheling scrap. The sale was made by verbal agreement, which was subsequently confirmed by a letter from the defendant and a reply by the plaintiff. The evidence of the plaintiff and his witnesses is that the defendant guaranteed that the goods he sold were "good clean busheling scrap." The plaintiff claims that this expression constituted a collateral warranty of quality of the material sold, and has sued to recover damages for breach thereof. The court at trial term granted the motion for new trial on the ground that "the warranty proved did not survive acceptance." When the case was in this court before, it was held that parol proof of the warranty was competent, on the ground that the letters or memoranda did not contain the entire agreement of the parties. 75 App. Div. 66, 77 N. Y. Supp. 792. "Busheling scrap" has a definite

signification. It consists of small pieces of wrought iron and steel. There are two grades, No. 1 and No. 2. The contract of sale was made on defendant's premises. The scrap was in a bin near at hand, and the plaintiff had the opportunity to inspect, but the verdict of the jury establishes that he did not avail himself of the privilege. If there was a collateral warranty, the plaintiff was not bound to examine the scrap sold. He could rely on the representations made, and, if the goods were defective and failed to conform to the warranty, he might retain them and recover for the breach. Brigg v. Hilton, 99 N. Y. 517, 3 N. E. 51, 52 Am. Rep. 63; Henry & Co. v. Talcott, 175 N. Y. 385, 67 N. E. 617. These goods were loaded from the bin on the car by the plaintiff's men, and were shipped to Latonia, Ohio. They were found to contain dirt and small pieces of malleable iron, cast iron, tin, etc., impairing the value of the whole commodity. The plaintiff sold at a loss, due, it is claimed, to the foreign substances mixed in with the busheling scrap.

The serious question in the case is whether the representation made was in the nature of a warranty of quality, or a mere description of the goods sold. There is no contention that the busheling scrap—the pieces of wrought iron and steel—were defective. The whole lot was diminished in value because of the presence of these other substances, not that the scrap iron was of inferior quality. Instead of delivering only busheling scrap, there was other noxious material delivered with it. The contention of the defendant is that the collateral warranty does not extend to the other refuse material. If the busheling scrap had not conformed to the guaranty in quality, the warranty would have survived acceptance, but, inasmuch as that was not defective, there is no warranty.

The rule that a representation merely descriptive of the article sold is not a warranty is laid down in Cowen's Treatise, vol. 1, p. 345 (3d Ed.), which is a compendium of good law, well stated. A wood described as "brazilletto wood," while that in fact delivered was peachum wood, and in another cited where the cloth sold was a kind known as "blue guineas," while that received by the purchaser was another kind, it was held that the representation made in each instance was merely descriptive of the article sold, and not a warranty of quality. The seller failed to perform the precedent condition of his contract, in that he did not deliver the article which he had contracted to sell. This principle has been adhered to without deviation, although in the particular cases the distinction between a failure to comply with the agreement and a collateral warranty is somewhat finely drawn. In Coplay Iron Company v. Pope et al., 108 N. Y. 232, 15 N. E. 335, the plaintiff, a manufacturer, sold to the defendants a quantity of No. 1 extra foundry pig iron, to be thereafter manufactured and delivered. There was no collateral warranty. The iron delivered in fulfillment of the executory contract was not No. 1 extra iron, but a grade of inferior quality and value. The court held, there being no warranty of quality, that, the defendants having accepted and retained the iron after an opportunity to inspect the same, the construction was conclusive that

they had accepted of its quality. The court add at page 236, 108 N. Y., page 336, 15 N. E.:

"Here there was no collateral warranty or agreement as to the quality of the iron. The representation as to the kind and quality of iron was part of the contract of sale itself, descriptive simply of the article to be delivered in the future; and, clearly, within the cases cited, an acceptance of the property by the defendants, without any offer to return the same at any time, deprives them of any right to make complaint of its inferior quality."

So in Waeber et al. v. Talbot et al., 167 N. Y. 48, 60 N. E. 288, 82 Am. St. Rep. 712, the defendants, who were canners of vegetables, sold to the plaintiffs cases of "Talbot extra fine peas sieve 23—24." The words "sieve 23—24" were well known to the trade, indicating the size of the mesh through which the product was sifted. It will be observed that there was no warranty of quality accompanying this executory contract of sale, and no such question was submitted to the jury or considered on the trial ultimately. The peas delivered were of the precise kind sold, but, by reason of a drought, were inferior in quality. The court held that the words were descriptive, and that it was the duty of the plaintiffs to inspect the goods within a reasonable time, and, if they were unsatisfactory, to return them and rescind the agreement. The court, at page 57, 167 N. Y., page 290, 60 N. E., 82 Am. St. Rep. 712, approves the following extract from Benjamin on Sales:

"If the sale is of a described article, the tender of an article answering the description is a condition precedent to the purchaser's liability; and, if this condition be not performed, the purchaser is entitled to reject the article, or, if he has paid for it, to recover the price as money had and received for his use."

In Gentilli v. Starace, 133 N. Y. 144, 30 N. E. 660, Carleton v. Lombard, Ayres & Co., 149 N. Y. 137, 43 N. E. 422, and 149 N. Y. 601, 44 N. E. 1121, and the other cases on this proposition cited on the brief of the respondent's counsel, the words used were merely descriptive of the character of the article agreed to be sold, and in each case the court carefully notes that no express warranty was given.

We think, from the mass of authority upon the subject under consideration, two or three principles may be deemed to be fundamental: (1) That in an executory contract of sale, where an article known to the trade by a specific designation is sold by this known designation, there is no warranty of quality. The words describe the article sold, and, if a different kind of goods is delivered, it is the duty of the purchaser to examine them with reasonable promptness, and return them at once if unsatisfactory. (2) In case of a sale by sample, there is a warranty that the goods delivered will conform to the sample. (3) If upon a sale the seller expressly warrants the goods to be of a certain quality, there is no duty of inspection upon the purchaser. He may have the opportunity to examine, but his failure to do so does not absolve the seller from the effect of his warranty. The vendee may rely upon the warranty. That survives acceptance, and the vendor is liable in damages for breach of his collateral independent undertaking. I take it that if

a vendor sells a quantity of wheat, guarantying it to be clean, and the buyer relies upon the warranty, and there are dirt and extraneous material mixed with the wheat, the words amount to a warranty against this foreign substance. On the other hand, if he says the wheat is "No. 1 hard," that term having a precise significance in the trade, and delivers No. 2, or some other inferior grade, there is no breach of warranty. The seller has not performed his agreement at all, and the remedy of the purchaser is to reject the wheat as soon as he learns that the contract has not been complied with. So, if he deliver No. 1 hard of a defective quality, there is no collateral undertaking, because the seller did not warrant the quality of the wheat sold. In the present case the defendant guarantied that the busheling scrap was good and clean. This representation did not refer to any particular grade, nor to a specific kind known to the trade. The terms of accepted description in busheling scrap nomenclature were "No. 1" and "No. 2." Had the defendant described the scrap he sold as No. 1, and then delivered No. 2, or an inferior grade, his case would come within the compass of the authorities cited, holding the words used were descriptive and a part of the contract of sale. The expression "good clean busheling scrap" did not identify any particular type of busheling scrap, but conveyed the impression and guarantied that the article to be delivered was free from foreign matter. It was an affirmation of an existing fact as to the condition of the scrap and that is the essence of a warranty.

The infirmity in the position of the counsel for the respondent so well urged is that it overlooks the crucial fact that the representation made by the defendant, extends beyond the grade of the goods. The term "clean" may be applied to a great variety of merchandise, and its scope and meaning are within the comprehension of any one. Clean busheling scrap, like clean oats or clean flour or clean seed grain, needs no expert to define it. The term does not relate to the particular grade, but to the quality of the bunch sold, considered in its entirety. The order should be reversed, with costs of this appeal to the appellant, and judgment ordered on the verdict in favor of the plaintiff, with costs.

Order reversed, with costs and disbursements of this appeal, and judgment ordered on the verdict, with costs. All concur, except McLENNAN, P. J., and STOVER, J., who dissent.