No. 44,366

STATE OF KANSAS, *Appellee*, v. WILLIAM D. JOHNSON, *Appellant*.

(410 P. 2d 423)

Opinion filed January 22, 1966.

*J. Paul Jorgensen,* of Wichita, argued the cause, and *Grey Dresie,* of Wichita, was with him on the briefs for the appellant.

*J. O. Ballinger,* Deputy County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, *Keith Sanborn,* County Attorney, and *E. L. Wheeler,* Special Prosecutor, of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is a misdemeanor case wherein it appears that this court, for the first time, is called upon to review a criminal prosecution and conviction, instituted and obtained by the State, under Laws of 1909, Chapter 178 [now K. S. A. 21-1212], pertinent provisions of which read:

"RELATING TO PREVENTION OF NUISANCES.

"An Act to prevent nuisances, and providing a penalty for the violation thereof.

"Section 1. That any person who shall, as owner, lessee or occupant, maintain any stable, shed, pen or other places where horses, cattle, hogs or other animals are kept, closer than twenty-five feet to the dwelling-house of another, or who shall permit the same to remain unclean to the annoyance of any citizens of this state, shall upon conviction be adjudged guilty of a misdemeanor and fined in any sum not less than five dollars nor more than fifty dollars for each offense; and if said nuisance be not removed within five days thereafter it shall be deemed a second offense, and every like neglect of each succeeding five days thereafter shall be considered an additional offense against the provisions of this act; provided, that this act does not apply within the fire limits of any city."

The State commenced the action by filing a verified complaint in the court of common pleas of Wichita, Sedgwick County, wherein one Frieda M. Kennedy alleged in substance that the defendant, William D. Johnson, did then and there unlawfully and willfully, as owner, maintain a pen where horses and goats were kept closer than twenty-five feet to the dwelling house of the affiant, and permits the same to remain unclean to the annoyance of other citizens of the state. Endorsed on the complaint were the names of seven state witnesses, one of which was identified as James Aikens, City-County Health Dept. Milburn, City-County Health Dept.

After a trial in the court of common pleas defendant was found guilty as charged. Thereupon he appealed from that court for trial *de novo* in the district court where, his counsel having waived a jury trial, the matter proceeded to trial upon his plea of not guilty. During the trial, according to the journal entry approved by both parties, the State adduced its evidence; the defendant's motion for discharge was overruled; defendant then adduced his evidence, and the State adduced its rebuttal evidence. At the close of the trial the court continued the case for two days. At that time it found defendant guilty as charged, assessed a fine of fifty dollars plus costs and granted defendant an extension of time in which to either pay the fine and costs or appeal from its decision. Thereafter the court granted the defendant five days in which to file a motion for a new trial. Such motion was filed, argued and overruled by the court. Thereupon defendant perfected an appeal from the judgment and the order overruling his motion for a new trial and brings the case to this court under specifications of error charging:

"1. The court erred in overruling defendant's motions for discharge made at the conclusion of the State's opening statement for the reason that the complaint charged no offense after amendment by the State in the opening statement.

"2. The court erred in ruling that the statute did not violate Section 10 of the Bill of Rights of the Constitution of the State of Kansas and the due process clause of the 14th Amendment to the Constitution of the United States when the court overruled the defendant's motion for discharge and the motion for new trial.

"3. The court erred in overruling defendant's motion for new trial."

There is actually little, if any, dispute between the parties as to the salient facts controlling the questions raised by the appeal. Most of them appear from an agreed statement, which is signed by counsel for the respective parties and included in the abstract of record. Such statement reads:

"Defendant owns Lot 12, Block B, Brown & Cummins Addition to Sedgwick County, Kansas. Block B is a ten-acre tract containing twelve lots. Brown & Cummins Addition is platted unrestricted area situated about one mile east of the Beech Aircraft factory between Douglas and Central Avenues extended east from Wichita. Defendant has maintained from one to three horses on the property for about ten years approximately 150 feet from the nearest (complaining witness' house.

"The State in its opening statement conceded that the defendant's pen was not within 25 feet of a house and stated that they elected to rely upon the second portion of K. S. A. 21-1212.

"At the conclusion of the opening statement, defendant moved that the defendant be discharged on the ground that the words 'the same' in the second portion of the statute referred to a pen within 25 feet of a house or if not so construed that the statute was so indefinite as to a standard of cleanliness that the defendant could not know when he violated the law and could not tell how to defend himself.

"The court overruled the motion and again overruled the motion for discharge at the conclusion of the State's evidence.

"Defendant took the stand in his defense and raised the same points on final argument and the court found the defendant guilty, assessed a fine of $50 and costs, granted time for filing a motion for new trial and stayed execution pending the filing and hearing of the motion for new trial.

"Upon overruling the motion for new trial, the court set the appeal bond pursuant to K. S. A. 62-1705(2) at $100, and continued the stay of execution pending the filing of the bond for double the fine and costs in the amount of $450, pursuant to K. S. A. 62-1705(1)."

Supplementing what has just been quoted it should be noted that, in addition to matters not specifically referred to in the foregoing statement, the parties have failed, doubtless through inadvertence, to stipulate, notwithstanding the fact the record makes

it appear evidence was introduced on the subject during the trial, that defendant had permitted his horse pen to remain unclean to the annoyance of other citizens of the state. Under such circumstances we must proceed on the premise there was substantial evidence to sustain the trial court's conclusion, inherent in its judgment, that the defendant had permitted the horse pen in question to remain unclean to the annoyance of other citizens.

In his brief appellant first directs our attention to the fact the appellee in its opening statement abandoned the portion of the complaint referring to a pen within twenty-five feet of a dwelling house and elected to stand on the portion thereof which reads "and permits the same to remain unclean." It is claimed, although not strenuously urged, that the statute is not sufficiently flexible to permit that action. We do not agree. As we read the statute (21-1212, *supra*) it has reference to a pen within twenty-five feet of a dwelling house of another, or to a pen which the owner permits to remain unclean to the annoyance of any citizens of this state, regardless of its proximity to a dwelling house. The complaint, although somewhat awkwardly worded, contained language which was sufficient to warrant the trial court's action in permitting the introduction of evidence as to the maintenance of the pen in question. It follows appellant's first specification of error lacks merit and cannot be upheld.

Strange as it may seem, each party states in his brief that the questions involved in this case are:

"1. What is the meaning of the word 'unclean' as it relates to livestock?

"2. How can a person determine when he is or is not violating this law?"

Both questions boil down to the proposition whether the language used in the statute, *i. e.*, "permit the same to remain unclean to the annoyance of any citizens of this state" is so vague and indefinite as not to be within the understanding or comprehension of a person of ordinary intelligence.

See *Connally v. General Const. Co.*, 269 U. S. 385, 70 L. Ed. 322, 46 S. Ct. 126, which reads:

"A criminal statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application, lacks the first essential of due process of law. P. 391." (Syl. ¶ 1.)

With respect to question 1, what is the meaning of the word "unclean," as used in 21-1212, *supra*, as it relates to a livestock pen? The word "unclean" as used in such statute means an excessive

amount of manure or other filthy refuse being permitted to accumulate in an animal pen.

With regard to question 2, heretofore quoted, the answer is short and simple. A person can determine ($a$) that he is violating the involved statute (21-1212) when he permits his animal pen to accumulate an excessive amount of manure and other refuse to the annoyance of any citizens of the state and ($b$) that he is not violating such statute if he keeps his pen in such a clean condition it does not accumulate a sufficient amount of manure and other offensive refuse to constitute an annoyance to other citizens.

In passing it should be stated that the word "clean" and, for that matter we may add, its antonym "unclean," are words that have a clear and understanding meaning to everyone.

See *Missouri, K. & T. Ry. Co. Of Texas v. State,* (Texas) 97 S. W. 720, where it is said:

". . . The terms, 'clean,' 'suitable,' and 'sanitary' are frequently used in ordinances and laws defining certain nuisances. They are usually held to be terms of such certain meaning and so generally understood that they can be safely submitted to a jury on an issue of fact. . . ." (p. 722.)

For a similar statement see 14 C. J. S., Clean, p. 1197, which reads:

". . . In its primary sense, 'clean' has been said to be a term of certain and generally understood meaning, frequently used in ordinances and laws defining certain nuisances, and also applicable to a great variety of merchandise, . . ."

See, also, *Lichtenstein v. Rabolinsky,* 98 N. Y., App. Div. 516, 90 N. Y. Supp. 247, which states:

". . . The term 'clean' may be applied to a great variety of merchandise, and its scope and meaning are within the comprehension of any one. . . ." (pp. 520, 521.)

Since, as previously demonstrated, the terms "clean" and "unclean" as used in the statute (21-1212) are readily understood and their scope and meaning are within the comprehension of everyone, we do not believe it can be said or held that the statute either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. Neither do we believe that it should be construed as subject to any constitutional objection on that ground. Thus, it becomes obvious that, under the facts and circumstances of record, there is no merit to the claim of error assigned by appellant in his second specification of error.

It should be stated that in reaching the conclusions just announced we adhere to the rule stated in the *Connally* case and, for that matter, to our own decisions, where such rule is followed, recognized, approved and applied. The insurmountable difficulty from appellant's standpoint in the case at bar lies in the fact the record, as herein outlined, does not disclose that 21-1212 is a criminal statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application.

For just a few of our decisions, which have upheld the constitutional validity of language contained in criminal statutes against attacks of vagueness, see *Marks v. Frantz*, 179 Kan. 638, 298 P. 2d 316, (to practice optometry in an unethical manner); *State v. Ashton*, 175 Kan. 164, 262 P. 2d 123, (negligent disregard of the safety of others); *State v. Davidson*, 152 Kan. 460, 105 P. 2d 876, (traffic code requiring a right turn to be made as close as practical to the right-hand curb or edge of the roadway); *State v. Carr*, 151 Kan. 36, 98 P. 2d 393, (any irregularity or fraud whatever with the intent to hinder, prevent or defeat a fair expression of the popular will at any election); *State v. Rogers*, 142 Kan. 841, 52 P. 2d 1185, (according to the legal or ordinary compensation or price for services rendered, salaries or fees of officers, or materials furnished); *Richardson v. Simpson*, 88 Kan. 684, 129 Pac. 1128, (or for any other dishonorable conduct).

Arguments advanced by appellant in regard to the overruling of his motion for new trial have been considered, discussed and disposed of in what has been heretofore stated. It follows his third specification of error lacks merit and cannot be upheld.

After careful consideration of the entire record on all contentions advanced by the parties we fail to find any error in this case warranting a reversal of the trial court's judgment. Therefore it must be affirmed and it is so ordered.

SCHROEDER, J., dissenting: In my opinion K. S. A. 21-1212 is unconstitutional because it is a criminal statute which forbids the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application. It therefore lacks the first essential of due process of law.

A *condition* set forth in this statute which has not been mentioned in the court's opinion is the fact that it applies only beyond

the fire limits of a city. In other words, it has application only to the *rural areas* of this state.

The expression in the statute "closer than twenty-five feet to the dwelling house of another" is misleading in this case because it has no application whatever. The pertinent provisions of the statute here applicable read:

"That any person who shall, as owner, . . . maintain any . . . pen . . . where horses . . . are kept, . . . who shall permit the same to remain unclean *to the annoyance of any citizens of this state,* shall upon conviction be adjudged guilty of a misdemeanor . . . *Provided,* That this act does not apply within the fire limits of any city." (Emphasis added.)

This case is important because it applies not only to horses but to cattle, hogs or other animals commonly raised by those engaged in agricultural pursuits in this state.

It is common knowledge among those who are familiar with agriculture, the primary industry of this state, that livestock is maintained in the rural areas in large numbers. There are periods of the year when the weather is inclement and the fields are muddy, so that frequently during three or four months of the year farmers cannot get into their fields to spread manure.

Of necessity, therefore, the pens where livestock is kept and fed are unclean. Even where an attempt is made to clean the pens, the manure must be piled in close proximity to the pen or within the pen before weather conditions permit its removal and spreading upon the fields.

It seems to me the emphasis placed upon this statute by the court, which centers upon the word "unclean," is somewhat misdirected. The statute does not make it an offense to maintain an unclean pen. The offense is committed only *when any citizen of this state is annoyed* by an unclean pen.

How is one engaged in the livestock industry in a rural area of this state to know when a citizen will be annoyed? Those citizens who live in the cities are very sensitive to the odors of the farmyard, and one traveling on the highway past a feedlot may be annoyed. How is the farmer to know when he is committing a criminal offense, and when he is not, where the question of annoyance is a matter for *subjective* determination.

If this statute is to be upheld the plaintiffs who brought the action in *Dill v. Excel Packing Co.,* 183 Kan. 513, 331 P. 2d 539, could force a criminal prosecution and conviction against the defendant in that case, even though they failed by their evidence to

establish the existence of a nuisance as a matter of law. There some citizens of this state were annoyed tremendously. Their property values had depreciated and they testified as to the existence of terrible odors. Yet, because they chose the rural area in which to live, the conduct of the Excel Packing Company in maintaining a cattle feedlot was said not to be a nuisance as a matter of law under all of the facts and circumstances there presented. A reading of the *Dill* case is commended to the reader in support of my dissent herein.

The standards of certainty in a statute punishing for a criminal offense are higher than those depending primarily upon civil sanctions for enforcement. (*State v. Hill,* 189 Kan. 403, 411, 369 P. 2d 365, 91 A. L. R. 2d 750.)

Nowhere does the court in the opinion speak of any objective standard by which a farmer can ascertain in advance whether or not he is committing a criminal offense under the provisions of 21-1212, *supra.* Whether a farmer commits an offense under this statute is entirely dependent upon the caprice a citizen of this state who claims to be *annoyed.* Nearly all city dwellers are annoyed by livestock odors.

It is respectfully submitted K. S. A. 21-1212 is unconstitutional in that it offends the due process requirement of the Fourteenth Amendment to the Federal Constitution and Section 18 of the Kansas Bill of Rights, and the judgment of the lower court should be reversed.