IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania  :
(Borough of Palmyra)  :
  : No.  866 C.D. 2016
  v.  :
  : Argued:  June 5, 2017
Raymond U. Brandt,  :
  Appellant  :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
   HONORABLE JULIA K. HEARTHWAY, Judge
   HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH    FILED:  August 25, 2017


  Raymond U. Brandt (Brandt) appeals from the April 27, 2016 judgment of sentence imposed by the Court of Common Pleas of Lebanon County (trial court) following a finding that he was guilty of summary offenses for violating section 302.1 of the Ordinance of the Borough of Palmyra (Ordinance) in failing to maintain his property in a "clean, safe and sanitary condition." Ordinance, §302.1. We affirm.


## Background

  Brandt owns real property located at 46-50 West Main Street in the Borough of Palmyra (Borough). On April 17, 2015, Jackie Wilbern, the Borough's Code Enforcement Officer, issued a notice of violation and cease and desist order

charging Brandt with violating section 302.1 of the Ordinance. (Trial court op. at 1.)[1] In pertinent part, Wilbern identified the following unlawful conditions: "Stacks of debris and miscellaneous materials in rear yard [and] [t]here is [an] accumulation of tires on the property." (Ex. 4.)

When Brandt failed to remedy these conditions within the prescribed time frame, the Borough issued him a citation on June 23, 2015, for violating section 302.1 of the Ordinance (case No. CP-38-SA-79-2015). Thereafter, on dates scattered throughout August, Wilbern inspected the property and the Borough issued Brandt four more citations for his ongoing violations of section 302.1 (case No. CP-38-SA-93-2015).[2] Before a magisterial district judge, Brandt either pled guilty to – or was found guilty of – these summary offenses.[3] He then filed summary appeals to the trial court for a *de novo* hearing. The trial court effectively consolidated the action at SA-79 with SA-93 and convened a trial on February 24, 2016. (Trial court op. at 2-3.)

At the trial, Wilbern stated that she had received complaints from Ernest Woolever, Brandt's next-door neighbor, regarding the condition of the property,

---

[1] Wilbern also charged Brandt with violating section 302.8 of the Ordinance, which prohibits the storage or parking of an unlicensed or inoperative vehicle, but prosecution for this infraction was apparently abandoned after Brandt removed the vehicle.

[2] *See* Ordinance, §106.4 (Penalty) ("Each day that a violation continues and each Section of this Code which is violated shall be deemed a separate offense.").

[3] Under Pennsylvania law, a borough may enforce its ordinance regulating health and public safety by a criminal action in the same manner provided for the enforcement of summary offenses under the Pennsylvania Rules of Criminal Procedure. *Borough of Walnutport v. Dennis*, 114 A.3d 11, 24 & n.10 (Pa. Cmwlth. 2015). "Although local ordinance violations are not listed as 'crimes' in the Crimes Code, they are treated as criminal violations because they can result in the imposition of criminal penalties." *Id.* at 19.

2

which she described as a multi-family dwelling with a gravel-covered yard area in the back. Wilbern testified that she initially inspected the property on March 19, 2015, and explained that the property was in a state of disarray with numerous items laying about the yard. She said that she returned to the property on June 4, 2015, and took photographs that displayed in the yard "piles of decorative stone, windows, doors, trash cans, an engine hoist, a saw horse, and an umbrella. There were also some vehicles and a refrigerator with covers on them." (Trial court op. at 4.) After this inspection, Brandt visited Wilbern and informed her that he received and/or uses these items as part of his construction business. (Trial court op. at 4-5.)

Wilbern testified that she visited the property on June 4, 2005, and July 27, 2015, and then pretty much on a weekly basis, oftentimes taking photographs of the areas that she found to be offensive, up until the date of the trial. In short, Wilbern testified that during her visits, "the general condition of the property had not changed, although various items would come and go," (Trial court op. at 5), and she essentially testified to that which was depicted in the photographs. Her testimony in these regards may be summarized as follows:

> July 27, 2015: "These photographs showed numerous tires, windows, engine hoists, and lawnmowers in the yard."
>
> October 18, 2015: "[T]he general condition had not changed and . . . some additional items, such as piping, plastic material, and radiator covers, were present in the yard."
>
> December 1, 2015: "Fence panels, windows, saw horses, [a] wheelbarrow and numerous other items could still be seen scattered around the premises."
>
> February 24, 2016: "[T]here remained tables, saw horses, fencing, windows, doors, wheelbarrows, and other items strewn throughout the yard."

3

(Trial court op. at 5-6.)[4]

Ultimately, Wilbern testified that she "has never seen the property in a cleaned-up condition," the property "presented a cleanliness problem," and, "in her opinion as the Code Enforcement Officer, [the property] was in violation of section 302.1 . . . ." (Trial court op. at 6; *see* R.R. at 30a-34a.) She emphasized that there were "numerous items strewn throughout the yard" and, therefore, "[t]he outside of the property [was] not controlled in a clean and sanitary condition . . . ." (R.R. at 31a-32a.) Wilbern further "noted that all six conditions involved identical allegations, and acknowledged that various items came and went from the premises, but the general condition remained the same." (Trial court op. at 6-7.)

On cross-examination, Wilbern admitted that she did not use a "check list" to determine whether the property violated section 302.1, but reiterated that it was her "professional opinion" that the state of the property contravened the Ordinance. (R.R. at 35a-36a.) Wilbern also admitted on cross-examination that the property is "basically" a gravel parking lot and noted that while the property is located in a commercial district, it is registered with the Borough as a "residential apartment." (R.R. at 37a.) On redirect, Wilbern explained that Brandt would need a zoning permit if he wanted to operate a business from his property and that, even if he had such a permit, the property would still be in violation of section 302.1 of the Ordinance. (R.R. at 38a-40a.)

Woolever, Brandt's neighbor, testified that he purchased adjoining property in January 2015 and stated that Brandt's property "is a junkyard." (R.R. at

---

[4] Many, if not all, of the photographs are located in the reproduced record. (*See* Reproduced Record (R.R.) at 81a-113a.)

42a.) He said that "there are numerous items strewn about the yard," such as "doors," "windows," "lawnmowers without motors," "an engine hoist," "pieces of fence," "lumber stacked against the home," "spray paint cans on a bench," and "a stack of stones." (R.R. at 42a.) Woolever added that he has "safety concerns, health concerns," stating that he saw a rat in the backyard in the past summer. (R.R. at 43a.) Woolever admitted that he and Brandt "do not get along" and are currently involved in a legal dispute regarding their properties' boundary line. (R.R. at 43a-44a; Trial court op. at 7.)

Brandt testified that "he conducts a construction business and uses the rear portion of his property as his workshop." (Trial court op. a 7.) He explained that the "items in the yard are used in his business" and "that he also repairs lawnmowers as part of his business." (Trial court op. at 7; *see* R.R. at 61a-62a.) Brandt further noted that "he had maintained the work area in his yard for many years prior to Woolever moving into the adjoining property in January 2015, but he was never cited for any problem with the property's exterior condition until then." (Trial court op. at 8.)[5]

After the parties submitted post-trial briefs, the trial court, by order dated March 11, 2016, found Brandt guilty on all five citations. On April 27, 2016, the trial court sentenced Brandt to pay a $100.00 fine at SA-79 for one citation. (R.R. at 120a.) The trial court also sentenced Brandt to a $200.00 fine for one citation and a $300.00 fine for each of the other three citations at SA-93. (R.R. at 121a.)

---

[5] As established by Wilbern's testimony, Brandt did not have a permit to conduct a contracting business on his property, and no evidence was introduced at the trial to show that the property was zoned to permit such a use.

Brandt subsequently filed a notice of appeal "from the Opinion and Order of Sentencing dated April 27, 2016," but only listed case number SA-79 in the caption. (Certified Record (C.R.) at #18.) The trial court ordered Brandt to file a Pa.R.A.P. 1925(b) statement, Brandt complied, and the trial court issued a Pa.R.A.P. 1925(a) opinion.

In rejecting Brandt's challenge to section 302.1 as being unconstitutionally vague, the trial court determined that "Wilbern had the authority to exercise her discretion in determining whether [Brandt's] property was 'clean, safe and sanitary' within the context of [s]ection 302.1 by reference to the common meanings of those words." (Trial court op. at 10.) The trial court then quoted from Merriam Webster to ascertain the common dictionary meanings of the operative terms:

> Clean: free from dirt, marks, etc.: not dirty: tending to keep clean: free from pollution or other dangerous substances.
>
> Safe: not able or likely to be hurt or harmed in any way: not in danger: not able or likely to be lost, taken away, or given away: not involving or likely to involve danger, harm, or loss.
>
> Sanitary: of or relating to good health or protection from dirt, infection, disease, etc.: free from dirt, infection, disease, etc.

(Trial court op. at 10, quoting www.merriamwebster.com/dictionary).

Based on these definitions, the trial court concluded: "[T]hese terms mean that the exterior of a property should be free of an accumulation of items, regardless of whether such items are used in the occupant's business." (Trial Court op. at 10.) As such, the trial court reasoned, "this language is sufficient to apprise occupants of the type of condition which is prohibited." (Trial court op. at 10-11.)

6

In addition, the trial court concluded that the credible testimony of Wilbern and Woolever,[6] coupled with the photographic evidence, was sufficient to establish that Brandt violated section 302.1 of the Ordinance. In this regard, the trial court determined:

> [B]oth of these witnesses described the presence of numerous items of household structures, machinery, automotive and machine parts, scrap, and other odds and ends which created a cluttered, messy, and dangerous condition on [Brandt's] property. The photographs taken by Wilbern revealed that the property remained in this general condition up to the point of the *de novo* hearing . . . .

(Trial court op. at 13-14.) For legal support, the trial court relied predominately on unpublished case law from this Court where we found the evidence sufficient to sustain a violation of section 302.1 of the International Property Maintenance Code (IPMC), as that provision has been adopted and incorporated into municipalities' codes and/or ordinances. (Trial court op. at 12-13, citing *Commonwealth v. Kemmerer*, (Pa. Cmwlth., Nos. 2144 and 2217 C.D. 2012, filed June 10, 2013) (unreported); *MacQuarrie v. Commonwealth*, (Pa. Cmwlth., No. 581 C.D. 2008, filed December 8, 2008) (unreported)).

The case is now before this Court.

---

[6] In crediting at least part – if not all – of Woolever's testimony, the trial court found: "Whatever bias there may have been toward [Brandt], we found credible [Woolever's] description of the state of [Brandt's] property at various times from the time he purchased the neighboring property in January 2015." (Trial court op. at 14.)

## Discussion

As a prefatory matter, the Borough argues that, because Brandt only listed the case at SA-79 on his notice of appeal, this Court lacks jurisdiction to review the judgment of sentences related to case number SA-93. We disagree.

Our Supreme Court has explained:

> Where a party specifies a particular part of a judgment or order in their [sic] notice of appeal, appellate review may nevertheless be extended to orders not identified in the notice of appeal if the specified and unspecified orders are connected, the intention to appeal the unspecified order is apparent, and the opposing party has not suffered prejudice and has had an opportunity to brief the issues.

*K.H. v. J.R.*, 826 A.2d 863, 871 (Pa. 2003).

Here, although the action at SA-93 was not specifically mentioned in the notice of appeal, it is clear that Brandt intended to appeal this matter as well. As Brandt correctly states, both cases were effectively consolidated for trial, and given this procedural overlap, plus the fact that Brandt received four summary convictions for ongoing violations at SA-79, it seems highly unlikely that he wanted to appeal only one of his five summary convictions. Further, the trial court rendered judgment of sentences for both SA-79 and SA-93 on the same date; the issues raised in both actions are identical; the trial court disposed of these issues in its Pa.R.A.P. 1925(a) opinion; and the Borough, having thoroughly briefed the issues before the trial court and this Court, has not sustained demonstrable prejudice. Therefore, applying the principles of *K.H.*, we conclude that there is no jurisdictional impediment that prevents us from entertaining both appeals and we will proceed to address Brandt's two appellate arguments on the merits.

8

**Vagueness**

Brandt argues that section 302.1 violates his fundamental due process rights because the terms "clean, safe and sanitary" are platitudes; the property was not harmful to persons or the environment and the concept of "clean" is predicated solely on subjective judgement; Wilbern was unable to define the terms in detail and issued only conclusory opinions regarding the property; and the phrase as a whole does not provide fair notice as to the proscribed conduct, inviting arbitrary and discriminatory enforcement by Wilbern.

"Due process demands that a statute not be vague." *Commonwealth v. Thur*, 906 A.2d 552, 561 (Pa. Super. 2006); *see Commonwealth v. Noel*, 857 A.2d 1283 (Pa. 2004). The void-for-vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Commonwealth v. Duda*, 923 A.2d 1138, 1147 (Pa. 2007). In other words, a law is unconstitutionally vague if "persons of common intelligence must necessarily guess at its meaning and differ as to its application" or it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis . . . ." *Commonwealth v. Cotto*, 753 A.2d 217, 220 (Pa. 2000) (citations and internal quotation marks omitted).

"However, a statute will not be deemed unconstitutionally vague if the terms, when read in context, are sufficiently specific that they are not subject to arbitrary and discriminatory application." *Id.* at 220. Where a vagueness challenge does not allege that the statute infringes First Amendment freedoms, "the specificity of a statute must be measured against the conduct in which the party challenging the statute has engaged." *Commonwealth v. Mayfield*, 832 A.2d 418, 422 (Pa. 2003).

9

Significantly, "the violator whose conduct falls clearly within the scope of [the statutory] standard has no standing to complain of vagueness," *Commonwealth v. Heinbaugh*, 354 A. 2d 244, 246 (Pa. 1976), or to assert "the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 495 (1982). "The rationale [for this rule] is evident: to sustain such a challenge, the complainant must prove that the enactment is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Id.* at 495 n.7 (citation and internal quotation marks omitted); *see Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010).

In entertaining a void-for-vagueness claim, this Court initially focuses on the language of the Ordinance, *see Boos v. Barry*, 485 U.S. 312, 329 (1988), keeping in mind the statutory construction principle that "[u]ncertainties in the interpretation of an ordinance are to be resolved in favor of a construction which renders the ordinance constitutional." *Upper Salford Township v. Collins*, 669 A.2d 335, 336 (Pa. 1995).

Section 302.1 has been incorporated into the Ordinance through the Borough's adoption of the IPMC. (Ordinance, §71; Ex. 2.) Entitled "Sanitation," this provision provides:

> All exterior property and premises shall be maintained in a clean, safe and sanitary condition. The occupant shall keep that part of the exterior property which such occupant occupies or controls in a clean and sanitary condition.

(Ordinance, §302.1; Ex. 3.)

Based upon the plain meaning of its text, the overriding thrust of section 302.1 is that the exterior property not pose a risk of harm, particularly one that could

10

possibly materialize into bodily injury or damage to physical health/the environment, and the heading of the Ordinance and dictionary definitions for "safe" and "sanitary" proffered by the trial court confirm this. Although the meaning of "clean" must be tethered to the same concepts that "safe" and "sanitary" convey,[7] the word can fairly be construed, in accordance with its ordinary usage in the vernacular,[8] to describe a physical state that is "free from dirt, filth, refuse, or remains" and "other harmful growth and rubbish[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 418 (Gove ed., 1986).

Moreover, section 108.1.2 of the Ordinance prohibits "unsafe equipment" on a premises and sanctions condemnation for a violation. This provision defines "unsafe equipment" to include, among other items, "any boiler, heating equipment, . . . electrical wiring or device, flammable liquid containers," and also any "other equipment . . . in such disrepair or condition that [it] is a hazard to life, health, property or safety of the public or occupants of the premises or structure." Ordinance, §108.1.2. In relevant part, section 307.1, pertaining to "rubbish and garbage," states that "[a]ll exterior property and premises . . . shall be free from any accumulation of rubbish," Ordinance, §307.1, and "accumulation" is defined by the dictionary as "an accumulated mass, quantity or number." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 13 (Gove ed., 1986). In the general definitions section of the Ordinance, "rubbish" is denoted as "[c]ombustible and noncombustible waste

---

[7] "Words are known by the company they keep." *Commonwealth ex rel. Fisher v. Philip Morris, Inc.*, 4 A.3d 749, 756 n.9 (Pa. Cmwlth. 2010).

[8] "[D]ictionaries provide substantial evidence of a term's ordinary usage." *Coulter v. Department of Public Welfare*, 65 A.3d 1085, 1089 n.7 (Pa. Cmwlth. 2013) (citation omitted); *see* Ordinance, §201.4 (stating that undefined terms "shall have ordinarily accepted meanings such as the context implies.").

materials" and includes "paper, rags, cartons, boxes, wood, excelsior, rubber, leather, tree branches, yard trimmings, tin cans, metals, mineral matter, glass, crockery and dust and other similar materials." Ordinance, §202.

Concerning the Ordinance's applicability to a particular situation, section 102.1 states that "[w]here, in a specific case, different sections of this code specify different requirements, the most restrictive shall govern." Ordinance, §102.1.[9] When this provision is viewed alongside the sections previously discussed, they collectively work together to breathe additional life and substance into the term "clean" in section 302.1

Initially, by its very language, section 302.1's phrase "clean, safe and sanitary" operates in a broader manner than sections 108.1.2 and 307.1 because the phrase is not limited to the general class of items enumerated in the other two sections. For this same reason, the phrase also has a farther reach over the activities that are proscribed and goes beyond prohibiting the storage of "unsafe equipment" and the accumulation of "rubbish." Being the most comprehensive (in relation to the amount of unlawful conduct it prohibits) or, stated conversely, the "most restrictive" (in relation to the amount of conduct it allows) of the lot, section 302.1 necessarily encompasses and includes conduct that is prohibited in sections 108.1.2 and 307.1 – and then some. In other words, a violation of either sections 108.1.2 or 307.1, or both, will always constitute a violation of section 302.1, but not vice versa. Consequently, sections 108.1.2 and 307.1 help inform our understanding of the type of conduct that section 302.1 does not allow, and, at the same time, demonstrate that

---

[9] *Cf. Commonwealth v. Buzak*, 179 A.2d 248, 250 (Pa. Super. 1962) ("It is the policy of the law not to permit prosecutions under the general provisions of a penal code when there are special penal provisions available."), *superseded by statute as stated in Commonwealth v. Nypaver*, 69 A.3d 708, 713-14 (Pa. Super. 2013).

12

section 302.1 makes it illegal to "accumulate" the objects or items that are expressly listed in sections 108.1.2 and 307.1 and also objects or items that are substantially similar.

Equally important, the courts have long held, and continue to hold, that an ordinance requiring a landowner to maintain the premises in a "clean" condition is not unconstitutionally vague. The underlying proposition supporting these decisions is that the term "clean" has "a clear . . . meaning to everyone," and is "within the comprehension of any one," *State v. Johnson*, 410 P.2d 423, 427 (Kan. 1966) (citations omitted), and therefore, it is "usually held to be [a] term[] of such certain meaning and so generally understood that [it] can be safely submitted to a jury on an issue of fact." *Missouri, K. & T.R. Company v. State*, 97 S.W. 720, 722 (Tex. Civ. App. 1906), *rev'd on other grounds by* 100 S.W. 766 (Tex. 1907).[10] As an example, in upholding an ordinance requiring a landowner to keep the premises in a "clean and sanitary condition," the Supreme Court of Minnesota said: "[W]e think that most reasonable people could agree on an acceptable standard of 'clean and sanitary' in the context of a housing code ordinance." *City of Minneapolis v. Reha*, 483 N.W.2d 688, 692 (Minn. 1992). Likewise, in *Johnson*, the Supreme Court of Kansas affirmed the validity of a statute making it unlawful for the owner of a structure to "permit the same to remain unclean to the annoyance of any citizens of this state," and explained:

> Since . . . the terms 'clean' and 'unclean' as used in the statute are readily understood and their scope and meaning are within the comprehension of everyone, we do not

---

[10] *Accord, e.g.*, *State v. Heine*, (N.J. Ct. App., Civ. Div., No. A-0087-10T1, filed January 20, 2012) (unreported); *American Show Bar Series, Inc. v. Sullivan County*, 30 S.W.3d 324, 340 (Tenn. Ct. App. 2000); *City of Minneapolis v. Reha*, 483 N.W.2d 688, 692-93 (Minn. 1992); *People v. Balmer*, 196 Cal. App. 2d Supp. 874, 878-80 (Cal. Ct. App. 1961).

13

believe it can be said or held that the statute either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.

410 P.2d at 427 (citation omitted).

We agree with these decisions and their persuasive rationale.[11] Consistent with our preceding observations, we conclude that for the exterior of a property to violate section 302.1 on the ground that it is not "clean," at the very least, there should be: (1) an accumulation of items, including refuse, remains, and/or rubbish; (2) the accumulation is either constructed into a heap(s) or created by numerous objects located at various points; and (3) the accumulation is of such a nature and character that a fact-finder could reasonably determine that the condition of the property is "unclean." To us, the third element is best left to the province of the fact-finder to resolve because we believe that the fact-finder, utilizing the skills garnered through basic common human experience, is entirely competent and well-equipped to make these context-specific, factually-based determinations. *Cf. Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 970 (Pa. Cmwlth. 2015); *see also Gibson v. Workers' Compensation Appeal Board (Armco Stainless & Alloy Products)*, 861 A.2d 938, 944 (Pa. 2004)*; Commonwealth v. Ebaugh*, 783 A.2d

---

[11] In doing so, we decline Brandt's invitation to follow *State v. ACV Realty*, 2016 Ohio 3247, (Ohio Ct. App., 7th Dist., No. 15 MA 0072, filed May 26, 2016) (unreported), and the case upon which it relies, *State v. Bielski*, 5 N.E.3d 1037 (Ohio Ct. App., 7th Dist., 2013). In *Bieleski*, an intermediate appellate court of Ohio concluded that section 307.1 of the IPMC was unconstitutional on its face because the terms "accumulation," "rubbish," and "garbage" were not clearly defined. *Id.* at 1042-43. In *ACV Realty*, the court determined that section 302.1 of the IPMC and the phrase "clean, safe, and sanitary" fared no better. However, in engaging in their analysis, the courts in *Bieleski* and *ACV Realty* did not consult the dictionary definitions of the terms, or dismissed them without any meaningful analysis, and failed to consider the provisions of the IPMC as a whole. It is our respectful view that they are therefore unconvincing and do not pay appropriate homage to the plain meaning of the suspect terms.

14

846, 850 (Pa. Cmwlth. 2001).[12]  If the conduct at issue satisfies this standard, the condition of the property will be deemed to be harmful, or posing a risk of harm, to the general welfare of the community as a matter of law.  *See* Ordinance, §106.1; *Ebaugh*, 783 A.2d at 850; *Sobocinski v. City of Williamsport*, 319 A.2d 697, 699-70 (Pa. Cmwlth. 1974).

There is sufficient evidence in the record to support the trial court's factual description of the property as "cluttered" and "messy," containing "numerous items of household structures, machinery, automotive and machine parts, scrap, and other odds and ends . . . . "  (Trial court op. at 13-14.)  Undoubtedly, these objects have value to Brandt and we suppose many other individuals.  Nonetheless, an objective and reasonable fact-finder could assess the nature of the objects and legitimately characterize them as refuse in the sense that they are not typically stored on − or suitable to be stored on − residential property.  Indeed, Brandt admitted that he runs his business from the "gravel yard," does his "work" there, calls it his "workshop," and claims the items are "all construction material."  (R.R. at 49a, 55a, 61a, 63a-64a).  After reviewing the testimony and photographs, which support a

---

[12] In *Kohl*, this Court noted that we "may draw upon common sense and basic human experience to construe terms."  108 A.3d at 970.  In *Gibson*, our Supreme Court stated that the Pennsylvania rule of evidence pertaining to lay person testimony "contemplates admission of lay opinions rationally based on personal knowledge that are helpful to the trier of fact."  861 A.2d at 944.  The Court further stated that "[a]t common law, witnesses not qualifying as experts were generally permitted to testify regarding those things that they had seen, heard, felt, tasted, smelled, or done."  *Id.* (citation and internal brackets and quotations omitted).

In *Ebaugh*, this Court did not find a vagueness problem with a noise ordinance stating that an individual cannot "annoy or disturb a reasonable person of normal sensitivities."  *Id.* at 847 (citation omitted).  We determined that the phrase evidenced "an objective standard that looks to the impact of noise upon a reasonable person under the particular circumstances of the incident" and opined that "a person of ordinary intelligence would understand what conduct violates this provision . . . ."  *Id.* at 850.

finding that the objects were accumulated into sizable heaps and scattered in pieces throughout a notable portion of the "gravel yard," an objective and reasonable fact-finder could also conclude that the property was not maintained in a "clean" condition as that term is ordinarily used and commonly understood.

Construing section 302.1 in the way we have done, this Court concludes that the provision provides a reasonable person with adequate notice – and an ascertainable standard upon which to gauge – the type of conduct that is proscribed. Therefore, we conclude that section 302.1 is not void for vagueness as applied to Brandt's particular conduct in this case.

**Sufficiency of the Evidence**

Brandt argues that the evidence was legally insufficient to sustain his convictions because the citations issued by Wilbern did not provide notice as to what specifically needed to be remedied to come into compliance; the dates of the photographs did not correspond with the dates listed on the citations; the condition of the property constantly changed throughout the citations period; the items stored on the property were obtained and/or used as part of Brandt's construction business; and the Borough's photographs and testimony failed to establish violations of section 302.1.

According to Pennsylvania law, any defect with respect to the content of a citation is unrelated to a sufficiency challenge, which focuses solely on whether the evidence adduced at trial satisfies the elements of a crime. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). In any event, to merit relief, a defendant must raise the defect before the conclusion of trial and establish that the defect resulted in prejudice or unfair surprise. Pa.R.Crim.P. 109; *Borough of Walnutport v.*

16

*Dennis*, 114 A.3d 11, 20-21 (Pa. Cmwlth. 2015).[13]  Here, Brandt does not allege prejudice or unfair surprise.  Brandt also never raised this issue in his Pa.R.A.P. 1925(b) statement; therefore, it is waived for purposes of appellate review.  Pa.R.A.P. 1925(b)(4)(vii); *Kull v. Guisse*, 81 A.3d 148, 160 (Pa. Cmwlth. 2013).

We do note, however, that Brandt's contentions concerning the citations appear meritless.  In the notice of violation, Wilbern stated that the unlawful condition consisted of "[s]tacks of debris and miscellaneous materials in rear yard [and] [t]here is an accumulation of tires on the property."  (Ex. 4).  In light of the circumstances of this case, her reference to this notice in subsequent citations to explain the nature of the violation seems to constitute adequate notice, because even though "various items came and went from the premises," the stacks of debris and miscellaneous materials were always present, in one configuration or another, and "the general condition [of the property] remained the same."  (Trial court op. at 6-7.) Indeed, at trial, Wilbern stated that he "didn't tidy anything up for the camera," meaning he did not try to "clean up" property, and confirmed that the changes in the appearance to the property occurred because he either repaired, sold, or used preexisting items and/or collected additional items.  (R.R. at 61a-62a.)   Ultimately, these facts support the conclusion that while Wilbern may have "changed" the physical appearance of the condition, he made no meaningful attempt to remedy the condition itself.  Consequently, on this record, Brandt would not have benefited from

---

[13] "A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a . . . citation, . . . unless the defendant raises the defect before the conclusion of the trial in a summary case . . . and the defect is prejudicial to the rights of the defendant." Pa.R.Crim.P. 109; *see Borough of Walnutport*, 114 A.3d at 21.

any further direction or specificity from Wilbern and he cannot now complain that inadequate notice thwarted his efforts to rectify the condition.

Further, although the dates of the inspection may have diverged from the dates of the citations, it is considerably difficult to decipher how or in what manner Brandt would have sustained prejudice due to this error. *Cf. Borough of Walnutport*, 114 A.3d at 21 ("Although the notice did not set forth the time period of the violation, [the defendant] cannot reasonably claim surprise or resulting prejudice warranting dismissal.").

Other arguments that Brandt makes regarding the legal inadequacy of the evidence were considered and rejected in *Kemmerer*.[14] In that case, the landowner contended that his summary convictions for failing to maintain a clean, safe, and sanitary condition could not stand because the items on his property were obtained while he was working as a licensed contractor and the objects had practical utility. Specifically, the landowner testified that he used the "bags of stones" to "fill in ruts on his property" and "repair his driveway" and the bag of shingles "are used for caps and are very expensive." *Kemmerer*, slip op. at 6. The landowner also contended that the items on the property in August 2011 were different from the items on the property in April 2011 and, therefore, the trial court erred in relying on the August 2011 photographs as evidence of the property's condition in April 2011, the month in which the citation was issued.

On appeal, this Court declined to find merit in these assertions. In doing so, we determined that the landowner was legally obligated to comply with section 302.1 regardless of whether the items on the property "were related to [the

---

[14] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa.Code §69.414(a), unreported decisions may be cited for their persuasive value.

18

landowner's] contracting business." *Kemmerer*, slip op. at 6. We similarly concluded that "even if some or all of the items on [the] property in August 2011 were different from the items on the property in April 2011, this would not relieve [the landowner] of [his] duty under [s]ection 302.1 of the Code to maintain [the] property in a clean, safe and sanitary condition." *Kemmerer*, slip op. at 6. Essential to this part of our conclusion was the fact that the testimony and a comparison of the photographs demonstrated that "the general condition of the property remained the same." *Kemmerer*, slip op. at 7. Accordingly, this Court in *Kemmerer* held that the August 2011 photographs depicted the usual and typical nature of the property's condition, and because the condition remained in such a state continuously, the August 2011 photographs were sufficient evidence to uphold the summary conviction related to the April 2011 citation.

Here, Brandt testified that all of the objects on the property were obtained and/or used in connection with his construction business. However, as in *Kemmerer*, this fact does not relieve Brandt of the obligation to maintain his property in compliance with section 302.1. The uncontradicted evidence also shows that throughout the time-period in which Wilbern issued the citations, the physical appearance of the property did not remain in a static state-of-being, but instead, constantly changed. Wilbern, however, testified that the general condition of the property remained the same up until the point of the *de novo* hearing. In this regard, Wilbern's testimony was corroborated by Brandt's testimony, wherein he admitted that he did not try to clean up the property and the property's condition changed only because he sold and/or used certain objects and collected more objects in their place. (R.R. at 57a-62a.) As the fact-finder, the trial court considered this testimony in conjunction with the photographs, and relying predominately on those photographs,

19

found that the property's general condition persisted on the dates of the citations and all the way through the dispute. (Trial court op. at 14.) *See also Commonwealth v. Holtzapfel*, 895 A.2d 1284, 1289 n.2 (Pa. Cmwlth. 2006).[15] Therefore, although the property varied in appearance with the passage of time, and the dates of the photographs differed from the dates of the citations, pursuant to *Kemmerer*, these facts did not preclude the trial court, as a matter of law, from finding Brandt guilty of the summary offenses.

Turning to Brandt's remaining contentions, we observe that in summary offenses, the prosecution is required to establish a person's guilt beyond a reasonable doubt. *Borough of Walnutport*, 114 A.3d at 22.

> The test for evaluating the sufficiency of the evidence in a conviction for a summary offense is whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the prosecution, the trier of fact could have found that each element of the offense charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Id*.

In at least two unreported decisions, this Court has found sufficient evidence to support a conviction for violating section 302.1 when confronted with facts comparable to those in the instant matter. In *Kemmerer*, we concluded that the evidence was sufficient to sustain a section 302.1 conviction where the items on the property included "multiple trash bags, buckets, trash bins, [] garden tools, [and] a flat tire and a black truck with a bed full of debris." Slip op. at 8. Similarly, this

---

[15] In *Holtzapfel*, this Court concluded that it was proper for the trial court to make findings with respect to a property's condition based solely on photographic evidence.

20

Court concluded in *MacQuarrie*:  "[The property's] exterior contained 'tires, hand trucks, ladders, lumber, barrels, cans, pneumonic jacks for cars, hoses, scrap metal, iron [and what] looks like a kitchen sink . . . . Clearly, [the landowner] was not maintaining his property in a clean, safe, and sanitary condition."  *MacQuarrie*, slip op. at 4 (citation omitted).

Here, viewing the evidence in the light most favorable to the Borough, we conclude that the evidence was sufficient to support Brandt's summary convictions for failing to maintain his property in a clean condition.  As found credible by the trial court, the testimony of Wilbern and Woolever accurately described the condition of the property, along with the items and objects that were located on it, and this testimony was buttressed by numerous photographs.  (Trial court op. at 13-14.)

As oft-stated, a picture is worth a thousand words, but we find that elaboration in such extraneous detail is unnecessary in this case.  For our purposes, it suffices to say that the photographs capture the general and reoccurring condition of the property as one where a substantial amount of refuse and debris are present throughout a significant portion of the "gravel yard."  Many times, the refuse is accumulated in heaps; other times it is dispersed randomly; a vast majority of the times, it is both.  Although not necessarily present during each and every picture, the items that commonly appear are:  several white doors with windows and several sections of fencing, both of which are stacked against the property's fence; wheelbarrows, tables, saw horses, an engine hoist, piping, and other machinery, which are densely concentrated in a small area with machine parts and other debris scattered around the immediate vicinity of that area; and piles of bricks, stones, wood, and indecipherable debris in the corner of the property where a "no trespassing" sign

21

is located. In view of this evidence, we cannot disagree with the trial court that the property was "cluttered" and "messy" and did not meet the standard of being "clean." (Trial court op. at 13).[16]

Finally, to the extent the record contains conflicting evidence and/or Brandt questions the veracity of Woolever's or Wilbern's testimony, or the accuracy of the photographs, these issues are not cognizable in a challenge to the sufficiency of the evidence. *See Commonwealth v. Griffin*, 65 A.3d 932, 939 (Pa. Super. 2013); *Commonwealth v. Gibbs*, 981 A.2d 274, 281-82 (Pa. Super. 2009).[17] It is beyond peradventure that the trial court, sitting as the fact-finder, is free to believe all, part or none of the evidence, to make all credibility determinations, and to resolve all conflicts in the evidence. *Holtzapfel*, 895 A.2d at 1289 n.2. This Court, accordingly, cannot upset the trial court's credibility determinations or reweigh (or otherwise reassess) the evidence to reach a finding contrary to the trial court. *See id.* Therefore, viewing the evidence in the light most favorable to the Borough as the verdict winner, while disregarding any unfavorable evidence, *see Prieto Corp. v. Gambone Construction Co.*, 100 A.3d 602, 609 (Pa. Super. 2014), we conclude that the record supports Brandt's convictions for failing to maintain the property in a clean, safe, and sanitary condition as required by section 302.1 of the Ordinance.

---

[16] Based upon the photographs, it appears to this Court that it would be difficult for a person to freely navigate within and/or around the condensed area of refuse.

[17] An argument that evidence was "unbelievable" is one that "goes to the credibility of the witness's testimony, and is, therefore, not an attack on the sufficiency of the evidence," *Griffin*, 65 A.3d at 939, and, similarly, "[a]n argument that the finder of fact should have credited one witness' testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence," *Gibbs*, 981 A.2d at 281-82 (citing and parenthesizing cases).

22

**Conclusion**

Having determined that section 302.1 of the Ordinance, as applied to the facts of this case, is not unconstitutionally vague and that the evidence was sufficient to sustain Brandt's summary offense convictions, we affirm the trial court's judgment of sentence.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania : 
(Borough of Palmyra) : 
                        :    No. 866 C.D. 2016
             v. : 
                        : 
Raymond U. Brandt, : 
             Appellant : 

## *ORDER*

AND NOW, this 25th day of August, 2017, the April 27, 2016 judgment of sentence entered by the Court of Common Pleas of Lebanon County (trial court) is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge